ANNIE GANNETT *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    January 12, 1921. — March 7, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Conflict of Laws. Negligence,* Railroad, Grade crossing. *Practice, Civil,* Report, Stipulation, New trial.

In an action to recover for personal injuries received in a collision of a team and a railroad train at a grade crossing of a highway and a railroad in New Hampshire, the rights of the parties are to be determined by the law of that State.

In an action against a railroad corporation for personal injuries received in a collision with a railroad train at a grade crossing of a railroad and a highway in New Hampshire at about eight o'clock on a dark night in September, there was evidence that the plaintiff was being driven as a guest to a station of the defendant in an open wagon having a dash light, that, when eight or ten feet from the grade crossing, the plaintiff first saw the headlight of the engine which was then seventy-five to one hundred feet away, that the plaintiff said to the driver, "Why, is that our train?" and that he then hit the horse with a whip and "in one instant" the wagon was struck by the engine. The only evidence of the speed of the train in approaching the crossing was testimony of the engineer, that it was about twenty-five miles an hour before reaching the crossing and at the crossing the speed was about six or seven miles an hour; and it appeared that the crossing was unprotected by gates, flagman or signal device, that the railroad track was in full view of the highway for over three hundred feet west of the crossing, from which direction the plaintiff was approaching, that the crossing was in a small village of about one hundred inhabitants, that there were but six trains a day in both directions over the crossing and an average

of ten passengers a day from the station, and that four fifths of the travel on the highway over the crossing was to and from the station. The jury found that signals, required by statutes of New Hampshire, were given. *Held,* that

(1) There was no evidence that the speed of the train at the crossing was excessive or unreasonable;

(2) It not appearing that the engineer or the fireman knew that the plaintiff or the driver of the team was suffering from any physical or mental disability or infirmity, they properly could assume that their signals would be regarded and that the team would be stopped and that no attempt would be made to cross the tracks until the train had passed;

(3) The law does not impose upon an engineer, who has given signals required by statute, the duty to stop or slacken the speed of his train upon seeing a traveller upon the highway approaching a grade crossing: he may properly assume that the traveller will not in the circumstances attempt to cross the track;

(4) There was no evidence of negligence of either the engineer or fireman.

In the above described action it was *held* that the judge rightly instructed the jury that the failure of the defendant to provide a crossing tender, or to maintain gates, a flagman or electric bells, or other warning signals at the crossing, was not negligence on its part and that there was no evidence that the defendant had failed to maintain adequate braking facilities for the train.

The jury at the trial above described returned a verdict for the plaintiff and to special questions propounded by the judge answered (1) that the engineer and fireman gave signals practically as required by statute, (2) that in the exercise of reasonable care the engineer and fireman should have seen the team in time to avoid the accident by slackening the speed of the train or stopping it and (3) that there was no negligence of the plaintiff which contributed to her injury. It was stipulated in a report of the case by the judge to this court that, "If the evidence did warrant the submission of the case to the jury, and if as matter of law the answers to the special questions are inconsistent with the verdict or with one another, there is to be a new trial." *Held,* that

(1) The jury having found that the signals were given, there was no evidence which would have warranted a finding of negligence of the defendant and the jury should have been so instructed;

(2) The evidence required the submission to the jury of the first question, whether the statutory signals were given;

(3) That question having been answered in the affirmative and there being no evidence of negligence of the defendant, it followed as matter of law that the answer was inconsistent with the verdict;

(4) In accordance with the terms of the report a new trial must be granted.

TORT for personal injuries received in a collision at a grade crossing in Chichester in New Hampshire between a wagon, owned and driven by one Langmaid, in which the plaintiff was riding as his guest, and a passenger train of the defendant. Writ dated November 12, 1917.

The plaintiff filed specifications of alleged negligence of the defendant as follows:

"(a) Failing to blow a whistle while approaching the railroad crossing.

"(b)  Failing to ring a bell when approaching the crossing.

"(c) Approaching the railroad crossing at an excessive rate of speed.

"(d)  Failing to provide crossing tender at the station.

"(e) Failing to provide gates or flagman at crossing.

"(f) Failing to properly light crossing or station.

"(g) Failure of the defendant's agents or servants to stop the defendant's engine in time to avoid the accident.

"(h) Failure to provide and maintain electric bells or other warning signals or guards at said crossing.

"(i) Failure to provide and maintain adequate headlights.

"(j) Failure to provide and maintain adequate braking facilities."

In the Superior Court the action was tried before *Keating*, J. The material evidence is described in the opinion. At the close of the evidence, the judge denied a motion of the defendant that a verdict be ordered for the defendant and instructed the jury that the failure of the defendant to provide a crossing tender at the station, gates, flagman, electric bells or other warning signals or guards at the crossing, as set forth in the plaintiff's specifications marked "(d)," "(e)" and "(h)" was not negligence on the part of the defendant and that there was no evidence that the defendant failed to provide and maintain adequate headlights or braking facilities on its train, as alleged in the plaintiff's specifications "(i)" and "(j)." The judge further instructed the jury with regard to the plaintiff's specification marked "(f)," as follows: "There is evidence that the lights of the station were lighted on the night of the accident. The plaintiff testified that the lights were not lighted, if I recall the testimony, but several witnesses testified that the lights were lighted, and Langmaid in his deposition said that the lights at the station were lighted. Now if you believe the testimony given by those witnesses and what Langmaid has said in his deposition, you will find that the station was lighted, and if you believe the testimony of those witnesses and what Langmaid said in his deposition, you will find that the station was properly lighted."

The case was submitted to the jury with three special questions which, with the answers, appear in the opinion. The jury returned a verdict for the plaintiff in the sum of $7,500. The judge reported the case for determination by this court upon the following stipulation: "If the evidence warranted the submission of the case to the jury, and if as a matter of law the answers to the special questions are not inconsistent with the verdict or with one another, judgment is to be entered for the plaintiff in the sum found by the jury; if the evidence did not warrant the submission of the case to the jury, judgment is to be entered for the defendant; if the evidence did warrant the submission of the case to the jury, and if as a matter of law the answers to the special questions are inconsistent with the verdict or with one another, there is to be a new trial."

*A. W. Rockwood*, for the defendant.

*L. R. Chamberlin*, (*F. Juggins* with him,) for the plaintiff.

CROSBY, J. This is an action of tort to recover for personal injuries, received by the plaintiff as the result of a collision between a wagon, in which she was riding with one Langmaid, and a train operated by the defendant at a grade crossing in the town of Chichester, New Hampshire.

The circumstances of the plaintiff's injuries briefly stated are as follows: She was spending her vacation at Pittsfield, New Hampshire, and on September 18, 1917, the date of the accident, she took the noon train from Webster's Mills, a small station near Pittsfield, for Chichester, about three miles distant, to visit Mrs. Langmaid. The latter met her at the station and they drove to Mrs. Langmaid's home about a mile and a half away. In the evening at about half past seven o'clock, Langmaid took the plaintiff in his team, intending to drive back to the station, where she expected to take a train due to arrive at fifty-two minutes after seven o'clock, to return to Webster's Mills. There was evidence that it was a dark night and that the wagon had a dash lantern on it; that in going toward the station they passed over a bridge a little less than an eighth of a mile from the crossing; that soon after passing this bridge, aside from the darkness of the night, there was an unobstructed view of the railroad track to the right of the highway. The track ran in a northerly and southerly direction, and the highway ran east and west. The

team approached the crossing from the west, while the train which collided with it came from the south.

The plaintiff testified that she knew she was approaching the crossing and would have to pass over it to reach the station; that she first saw the headlight on the engine when it was seventy-five to a hundred feet away; that at that time she was about eight or ten feet from the crossing; that she knew that there was a train due about that time; that it was very dark; that when she saw the light she said to Langmaid, "Why, is that our train?" and that he then hit the horse with the whip and "in one instant" the collision occurred. She further testified that when the horse was struck with the whip they were travelling at the rate of about six miles an hour and that thereafter the horse went a little faster. On cross-examination she testified that when the horse was struck by Langmaid they were "about fifteen feet as near as she could judge, or she should say eight to ten or twelve feet from the crossing," and that she did not hear the whistle sound or the bell ring as the engine approached the crossing. The deposition of Langmaid was read to the jury. In it he testified on direct examination in part as follows: that he was listening for the approach of the train; that he did not hear the whistle or the bell; that when he first saw the train it might have been two or three rods from them, and they were about on the track; that he knew a train was due about that time. On cross-examination he testified that the train was about two rods from him when he heard it; that when the horse was on the crossing he saw a black object about a rod and a half from him, and that the horse got off the track and the wagon was struck between the front and rear wheels. The train which the plaintiff intended to take was the one with which the wagon came into collision. The plaintiff and Langmaid testified that their eyesight and hearing were good. Several witnesses testified that they were listening as this train approached the crossing, and heard the sound of the whistle and the bell.

As the cause of action arose in New Hampshire, the rights of the parties are to be determined by the law of that State. Pub. Sts. N. H. c. 159, § 6, as amended by St. 1917, c. 48, were in evidence, and provide that "Whenever a locomotive approaches within eighty rods of a grade crossing over a highway, two long and two short whistles immediately following each other shall

be given, and the bell shall be rung until the locomotive has passed the crossing. . . ."

The case was submitted to the jury, who returned a verdict for the plaintiff, and answered three special questions propounded to them by the judge. The questions and answers were as follows:

"1. Were the signals given by the engineer and fireman practically as required by the statute?" The jury answer: "Yes."

"2. In the exercise of reasonable care should the engineer and fireman have seen the wagon in time to avoid the accident by slackening the speed of the train or stopping it?" The jury answer: "Yes."

"3. Was there negligence on the part of the plaintiff which contributed to her injury?" The jury answer: "No."

The jury having found that the statutory signals were given, the question remains whether the evidence warranted a verdict for the plaintiff. The engineer testified that when the engine was about over the crossing a horse came out on the right hand side of the track, and that that was the first he knew of the accident; that he immediately pushed the brake into emergency, and stopped the train as quickly as he could; that as he approached the crossing he was travelling at a speed of about twenty-five miles an hour, and when he came on to the crossing the train was running at a speed of about six or seven miles an hour. The fireman testified that as the train approached the crossing he was sitting on the left hand side of the engine cab pulling the bell cord with his right hand and looking out the front window; that the rays of the headlight shone on the crossing; that he was looking straight ahead until he heard the crash; and that it was dark and he did not see the team. While the jury were not bound to believe the testimony of the engineer as to the speed of the train as it came to the crossing, there was no evidence that would have warranted a finding that it was greater than he had stated.

No question is raised by the defendant that the grade crossing was not over a highway, or that the defendant was not required to give the statutory signals at that place. It appeared that Chichester was a small village of about one hundred people; that there were but six trains a day in both directions over this crossing; that there was an average of only ten passengers a day from the Chichester station; and that four fifths of the travel

over the highway was to and from the station. It also appeared that the railroad track was in full view from the highway for over three hundred feet west of the crossing. It is plain upon these facts that the speed of the train was not shown to be excessive or unreasonable. *Commonwealth* v. *Boston & Worcester Railroad,* 101 Mass. 201. *Giacomo* v. *New York, New Haven, & Hartford Railroad,* 196 Mass. 192, 194. *Chase* v. *New York Central & Hudson River Railroad,* 208 Mass. 137, 142. The facts in *Hubbard* v. *Boston & Albany Railroad,* 162 Mass. 132, plainly distinguish it from the present case.

It is well settled that a railroad in the operation of its trains has exclusive use of a grade crossing while they are passing over it; that if the statutory signals are given and a traveller disregards the warning and without sufficient reason insists upon crossing, he does so at his own risk. *Granger* v. *Boston & Albany Railroad,* 146 Mass. 276, 280. *New York Central & Hudson River Railroad* v. *Cambridge,* 186 Mass. 249, 251, 252. It follows that if the engineer or fireman either saw or ought to have seen the team approaching the crossing he properly could assume that it would be stopped and no attempt made to cross the tracks until the train had passed, in the absence of anything to show he knew the plaintiff or Langmaid was suffering from any physical or mental disability or infirmity. *Casey* v. *Boston & Maine Railroad,* 231 Mass. 529, 533. *Waldron* v. *Boston & Maine Railroad,* 71 N. H. 362, 365. *Bonnin* v. *Boston & Maine Railroad,* 77 N. H. 559. *Chesapeake & Ohio Railway* v. *Hall,* 109 Va. 296, 301. The law does not impose upon an engineer the duty to stop or slacken the speed of his train upon seeing a traveller upon the highway approaching a grade crossing; he may properly assume that the traveller will not at that time attempt to cross the track. There was no evidence in the case at bar of any obligation resting on either the engineer or fireman to look beyond the track, its signals, or other objects to be observed for the safety of the train for which he was responsible. *Cruzan* v. *New York Central & Hudson River Railroad,* 227 Mass. 594. We are of opinion that there was no evidence of negligence of either. *Daigneau* v. *Worcester Consolidated Street Railway,* 231 Mass. 166. *Boyle* v. *Worcester Consolidated Street Railway,* 231 Mass. 184. *Stearns* v. *Boston & Maine Railroad,* 75 N. H. 40, 47, 49. *Illinois Central Railroad*

v. *Ackerman,* 144 Fed. Rep. 959. *St. Louis & San Francisco Railroad* v. *Summers,* 173 Fed. Rep. 358. The case of *Clapp* v. *New York, New Haven, & Hartford Railroad,* 229 Mass. 532, cited by the plaintiff, is plainly distinguishable in its facts from the present case.

The judge rightly instructed the jury that the failure of the defendant to provide a crossing tender, or to maintain gates, a flagman or electric bells, or other warning signals at the crossing as set forth in the plaintiff's specifications "d," "e" and "h," was not negligence on its part, and that there was no evidence that the defendant had failed to maintain adequate headlights or braking facilities for the train, as alleged in its specifications "i" and "j." We are of opinion that negligence could not have been inferred if the crossing or station had not been lighted. There was much evidence to show that the station was lighted at the time of the accident. Langmaid and several other witnesses so testified.

The result is that, the jury having found that the signals were given, there was no evidence which would have warranted a finding of negligence of the defendant, and the jury should have been so instructed; but inasmuch as the parties have stipulated that "If the evidence did warrant the submission of the case to the jury, and if as matter of law the answers to the special questions are inconsistent with the verdict or with one another, there is to be a new trial," the entry must be in accordance therewith. The evidence required the submission to the jury of the first question, whether the statutory signals were given; that question having been answered in the affirmative, and there being no evidence of negligence of the defendant, it follows as matter of law that the answer was inconsistent with the verdict.

In view of the conclusion reached, it is unnecessary to determine whether the evidence would have warranted a finding that the plaintiff was in the exercise of due care. In accordance with the terms of the report the entry must be

*New trial granted.*