ANN PETERSON *vs.* BOSTON AND MAINE RAILROAD (and three companion cases).[1]

Suffolk.   April 7, 1941. — September 19, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Negligence*, Railroad, Grade crossing, Violation of rule. *Conflict of Laws.* *Railroad*, Grade crossing, Company rule.

In an action for injuries alleged to have been sustained through negligence in another State, the law of this Commonwealth governed the determination of the procedural question whether the evidence and

[1] The companion cases were against the same defendant by Nancy Peterson, Einar A. Peterson, administrator, and Einar A. Peterson, administrator.

permissible inferences therefrom were sufficient to warrant a finding of a failure by the defendant to conform to the standard of care established by the law of the other State where that standard was merely the care of the average prudent man in the circumstances.

Evidence as to the physical situation at a grade crossing on a branch line of a railroad in a country district where a public highway crossed the tracks at an obtuse angle and an approaching automobile operator, at a distance of more than two hundred feet from the crossing, had a clear view of the tracks for a long distance in the direction whence came a train which struck the automobile on the crossing, did not warrant a finding that the railroad corporation, which by signs and by the sounding of the whistle and the bell on the engine, had complied with all statutory requirements as to warning the public at the crossing, was guilty of negligence toward the operator in not providing additional protection or in operating a train over the crossing at a speed of between thirty and forty miles an hour.

A rule of a railroad corporation that the maximum speed at which a freight train should be run was twenty-five miles an hour was not adopted for the safety of the public at grade crossings, and breach of the rule through the running of a freight train at a greater speed at a public grade crossing was not evidence of negligence toward the operator of an automobile struck by the train thereon.

Mere failure of the engineer of a railroad train in New Hampshire to stop it before reaching a public grade crossing toward which he saw an automobile proceeding was not evidence of his negligence resulting in a collision of the train and the automobile in the absence of evidence that he did not do all he could to stop the train as soon as he had reason to believe that the operator of the automobile was not going to stop before entering the crossing.

FOUR ACTIONS OF TORT. Writs in the Superior Court dated June 19, 1936.

The actions were tried together before *Beaudreau,* J. There were verdicts for the plaintiffs on certain counts in the sums, respectively, of $500, $1,250, $8,445.50, and $12,165. The defendant alleged exceptions.

*F. P. Garland,* (*R. B. Johnson* with him,) for the defendant.

*Lee M. Friedman,* (*F. L. Kozol & J. Schneider* with him,) for the plaintiffs.

QUA, J. These are actions for personal injuries sustained by Ann Peterson and Nancy Peterson and for personal injuries and deaths of Edward Peterson and Ruth C. Peterson, all resulting from a collision on July 27, 1935, between a freight train of the defendant and an automobile driven by Ruth C. Peterson, in which the other persons named

were riding, at a grade crossing known as "Grasmere Crossing" in Goffstown, in the State of New Hampshire.

Ann, Nancy, and Edward were all minor children of Ruth. The accident happened at about 12:30 P.M. There was uncontradicted evidence that the day was fair.

In answer to special questions the jury found that the defendant maintained warning signs at the crossing (see N. H. Pub. Laws [1926] c. 249, §§ 13–21); that it caused two long and two short whistles to be given within eighty rods of the crossing and caused the engine bell to ring until the engine had passed the crossing (see N. H. Pub. Laws [1926] c. 249, § 23); and that the speed of the train exceeded twenty-five miles per hour. In each case the jury found generally for the plaintiff on a count alleging broadly that the injury (and the death, in the cases where death occurred) was caused by negligence of the defendant, and in each case found for the defendant on a second count alleging failure to provide a suitable crossing, failure to maintain warning signs, and failure to whistle and ring the bell.

Underlying all other issues is the question whether a verdict should have been directed for the defendant on the first count in each case on the ground that as matter of law there was no evidence that negligence of the defendant contributed to cause the accident. In determining this question we are bound by the law of New Hampshire in so far as that law establishes the standard of care. If by rule of law in New Hampshire a given set of facts does or does not constitute negligence we are bound by that rule as to that set of facts. *Smith* v. *Brown,* 302 Mass. 432, 433. *Stiles* v. *Wright,* 308 Mass. 326, 330. But where the law of New Hampshire goes no further than to lay down the general standard of the care of the average prudent man under the circumstances, while we are bound to observe that standard, we must determine for ourselves in accordance with our own law of procedure whether there is sufficient evidence to take the case to the jury on the question whether the defendant conformed to the standard. Am. Law Inst. Restatement: Conflict of Laws, § 595, comment b. *United*

*States Fidelity & Guaranty Co.* v. *Yost,* 183 Miss. 65, 82. *Fortein* v. *Delaware, Lackawanna & Western Railroad,* 90 N. J. L. 137, 141. *Singer* v. *Messina,* 312 Penn. St. 129, 135–137. *Tobin* v. *Pennsylvania Railroad,* 100 Fed. (2d) 435, 436, 439; certiorari denied, *sub nomine Pennsylvania Railroad* v. *Tobin,* 306 U. S. 640. What inferences are permissible from evidence is a matter of procedure and not of substantive law and is determined by the law of the forum. See further Am. Law Inst. Restatement: Conflict · of Laws, §§ 380, 385 (comment d), 594; Beale, Conflict of Laws, §§ 594.1, 595.1; *Hoadley* v. *Northern Transportation Co.* 115 Mass. 304, 307; *Gannett* v. *Boston & Maine Railroad,* 238 Mass. 125; *Gould* v. *Boston & Maine Railroad,* 276 Mass. 114; *Holland* v. *Boston & Maine Railroad,* 279 Mass. 342; and *Murphy* v. *Smith,* 307 Mass. 64.

Various items of evidence are put forward by the plaintiffs as sufficient to support a finding of the defendant's negligence. In our opinion they do not either separately or together support such finding. We proceed to consider them.

The plaintiffs' contention that the defendant's cross arm sign was not maintained in accordance with the provisions of N. H. Pub. Laws (1926) c. 249, §§ 13, 14, is based, we think, upon the mistaken belief that § 16 of the same chapter refers to the same signs to which §§ 13 and 14 refer. That this is not so seems clear from c. 4 of the Laws of 1915 and c. 88 of the Laws of 1917. There was no evidence of violation of law in the maintenance of the cross arm sign.

But it is further contended that there was evidence of negligence in that under the circumstances the defendant should have provided some additional and more effective warning than was furnished by the signs, the whistle and the engine bell, and in this connection may be considered evidence that the cross arm sign to which reference has already been made and which was located on a post on the easterly side of the crossing at Mrs. Peterson's right as she approached the crossing from the southeast and about

fifteen feet from the nearer rail was obscured to a traveller coming as Mrs. Peterson did by the branches of a pine tree which stood on the northeasterly side of the road about fifty-three feet from the sign and about sixty-eight feet from the nearer rail. In determining whether under the conditions existing proper care could be found to have required further provision such as flash signals, a crossing bell, gates, a flagman, or the like, it becomes necessary to examine into the physical conditions at the crossing. The railroad was a single track line known as the "North Weare Branch." It ran nearly east and west. There was no evidence of the number of trains running over it. The highway was known as "Route 114." It ran approximately northwest and southeast. From photographs it would appear to have had a black surface. One witness testified that it was "quite extensively travelled"; that there was "quite a little travel in the summer time." It was twenty-one feet wide at the crossing. There was the usual metal disk crossing sign in plain sight beside the road at Mrs. Peterson's right about three hundred feet from the crossing. At that point the rails on the crossing itself were obscured by a slight intervening rise in the roadway and the track to the left or west, from which direction the train came, could not be seen because of billboards, trees and bushes. But upon approaching nearer a view of the track to the left of the crossing began to develop. From photographs and a plan, the accuracy of which has not been questioned, taken in connection with the evidence most favorable to the plaintiffs, it appears that at some point between three hundred feet and two hundred feet from the crossing the railroad track could be seen for a long distance, which the witness who made the plan for the defendant testified was one thousand three hundred sixty feet to a point opposite the whistling post. If this measurement of the distance is not accepted as correct there remains no measurement and no substantial evidence that the view which must have existed was of less extent. Practically the same view continued until the track was

reached. And the cross arm sign came into full view at least as soon as the pine tree was reached. The track crossed the road at such an obtuse angle that a train approaching through the area of clear vision to a traveller in the position of Mrs. Peterson would be more nearly in front of him and more readily observable without looking sidewise than would be the case if the railroad crossed the road at right angles. As Mrs. Peterson passed over this space of between two hundred feet and three hundred feet she necessarily had an unobstructed view of the oncoming train, whose whistle and bell were then sounding. Although there were three or four houses in the vicinity it is plain that in general the crossing was a country crossing in a sparsely settled district. Some point is made of the fact that a trolley track which had followed along the side of the highway at Mrs. Peterson's left departed from it shortly before the crossing was reached and continued at an angle to the left in a direction generally parallel with that of the railroad, although at a lower level, but the presence and position of the two tracks were apparent to one who looked, and it was also apparent that the trolley track did not cross the highway and that the railroad track did cross it.

In view of the location and character of the crossing, the meager and indefinite evidence of the importance or extent of use of either the road or the railroad and of the continuous view which a traveller approaching as Mrs. Peterson did would necessarily have of any train approaching as did the train involved in this accident, we are of opinion that there is no evidence in this record to support a finding that the crossing was one of peculiar danger to persons approaching as she did, and that it could not reasonably be inferred that the defendant, having complied with all statutory requirements as to warnings, was under any obligation to her and her companions to provide further special protection at this point. *Commonwealth* v. *Boston & Worcester Railroad*, 101 Mass. 201. *Bailey* v. *New Haven & Northampton Co.* 107 Mass. 496. *Hubbard* v. *Boston & Albany Railroad*, 162 Mass. 132, 135, 136. *Giacomo* v. *New York, New Haven & Hartford Railroad*, 196 Mass. 192, 194. *Chase* v. *New York*

*Central & Hudson River Railroad,* 208 Mass. 137, 141, 142.
*Trask* v. *Boston & Maine Railroad,* 219 Mass. 410, 413, 414.
*Gannett* v. *Boston & Maine Railroad,* 238 Mass. 125, 132.
*Mannino* v. *Boston & Maine Railroad,* 300 Mass. 71, 76, 77.
No statute or decision of New Hampshire has been called
to our attention imposing any absolute duty to provide
special protection for a crossing like that here involved.
The standard of care seems to be only that of ordinary care
under the circumstances, and at least the later decisions
treat the matter on substantially the same basis as our own.
*Gage* v. *Boston & Maine Railroad,* 77 N. H. 289, 291. *Morier*
v. *Hines,* 81 N. H. 48, 50, 51.   *Jones* v. *Boston & Maine
Railroad,* 83 N. H. 73, 75, 76.   *Collette* v. *Boston & Maine
Railroad,* 83 N. H. 210.   *Despres* v. *Boston & Maine Rail-
road,* 87 N. H. 427.   *Cyr* v. *Boston & Maine Railroad,* 88
N. H. 278, 280, 281.   *Allison* v. *Boston & Maine Railroad,*
88 N. H. 420.   *Austin* v. *Boston & Maine Railroad,* 89
N. H. 309.   *Chevalier* v. *Boston & Maine Railroad,* 89 N. H.
367.   Compare *Carbone* v. *Boston & Maine Railroad,* 89
N. H. 12.

We have preferred to deal with the contention that the
defendant was negligent in not providing additional pro-
tection at the crossing as if that contention were fully open
to the plaintiffs notwithstanding the verdicts for the de-
fendant on the second counts and notwithstanding an
instruction by the court, to which no exception was taken,
and which therefore, so far as it went, became the law of
the trial, that there was no evidence that the crossing "was
not a suitable crossing within the meaning of" N. H. Pub.
Laws (1926) c. 249, § 1.   See *Tompkins* v. *Quaker Oats Co.*
239 Mass. 147, 151; *Horton* v. *North Attleborough,* 302 Mass.
137, 141.

Next it is contended that there was evidence of the de-
fendant's negligence in the speed at which the train was
operated.   Members of the train crew estimated the speed
as the train approached the crossing at "about twenty or
twenty-two miles an hour" and "about twenty-five miles
an hour."   An observer from a neighboring house judged it
to be "about twenty to twenty-five miles an hour."   The

only estimate of any greater speed came from the plaintiff Nancy Peterson, who was nine years old at the time of the accident, and who testified that she and her mother first saw the train when it was approximately twenty-five feet from the road and when they were from five to ten feet from the place where they were struck, and that in her opinion the speed of the train was "between thirty and forty miles an hour." There was also evidence from an expert called by the plaintiffs that a freight train of eleven cars (as was the train here involved) with a light load going twenty miles an hour could be stopped within one hundred twenty feet, and testimony that the engineer applied the brakes "about the time that his engine was at the [north-westerly] end of the crossing." There was evidence that when the train stopped the sixth car was on the crossing, and that the engine and cars were each approximately forty feet long and that the tender was twenty feet long. There was no evidence that the distance in which a train can be stopped is in direct ratio to its speed. If we assume, but without deciding, that the plaintiff Nancy's opportunity for observation was such as to render her testimony as to the speed of the train competent evidence (see *Davidson* v. *Beacon Hill Taxi Service, Inc.* 278 Mass. 540), still there was no evidence of a speed in excess of "between thirty and forty miles an hour." In view of the conditions established as facts in these cases, including the extensive and uninterrupted opportunity of travellers approaching from 'the southeast, to see the oncoming train, the fair day,. the blowing of the whistle, and the continuous ringing of the bell, we are not convinced that an inference of negligent operation at a country crossing of the type of this one can reasonably be drawn from any speed here shown. *Chase* v. *New York Central & Hudson River Railroad*, 208 Mass. 137, 142, 143. *Gannett* v. *Boston & Maine Railroad*, 238 Mass. 125, 131. *Follett* v. *Boston & Maine Railroad*, 308 Mass. 553, 557. *Henry* v. *Boston & Maine Railroad*, 125 Maine, 366. *Morier* v. *Hines*, 81 N. H. 48, 50, 51. *Osgood* v. *Boston & Maine Railroad*, 83 N. H. 262, 270. *Despres* v. *Boston & Maine Railroad*, 87 N. H. 427, 429. *Bassett* v.

*Delaware & Hudson Co.* 62 Fed. (2d) 74. *Markar* v. *New York, New Haven & Hartford Railroad,* 77 Fed. (2d) 282. Compare *Hicks* v. *New York, New Haven & Hartford Railroad,* 164 Mass. 424, 426, 427; *Copithorn* v. *Boston & Maine Railroad,* 301 Mass. 510, 518, *S. C.* 309 Mass. 363; *Collins* v. *Hustis,* 79 N. H. 446, 449; *Stocker* v. *Boston & Maine Railroad,* 83 N. H. 401, 402; *Morrison* v. *Boston & Maine Railroad,* 86 N. H. 176, 178.

But it was agreed by the parties that the defendant had a rule governing the conduct of employees, including engineers on the North Weare Branch, "that the maximum speed at which a freight train should be run was twenty-five miles an hour," and the plaintiffs argue that since the jury has found that the speed of the train as it approached the crossing exceeded twenty-five miles an hour there is evidence of negligence in the breach of this rule. The effect of breach of rules made by an employer for the guidance of his employees in the conduct of his business as evidence of negligence in an action by a third person was fully discussed and settled in *Stevens* v. *Boston Elevated Railway,* 184 Mass. 476. It was there held that such breach is evidence of negligence where the rule has been adopted by the defendant "in reference to the safety of third persons." 184 Mass. at page 478. See also page 479. And on page 480 the reason for the rule is stated in these words, "Against the proprietor of a business, the methods which he adopts for the protection of others are some evidence of what he thinks necessary or proper to insure their safety." It follows that only a plaintiff belonging to a class of persons in reference to whose safety a rule has been adopted can rely upon breach of that rule as evidence of negligence. Not every disobedience of internal regulations between employer and employee will supply evidence of negligence in favor of a third person. So far as we are aware this distinction has been consistently observed. See Wigmore on Evidence (3d ed.) § 282; *Gerry* v. *New York, New Haven & Hartford Railroad,* 194 Mass. 35, 37; *Crowley* v. *Boston Elevated Railway,* 204 Mass. 241, 248; *McGlauflin* v. *Boston & Maine Railroad,* 230 Mass. 431; *Boston & Maine Railroad* v.

*Daniel,* 290 Fed. 916, 922. It seems to have been fully recognized in *Derosier* v. *New England Telephone & Telegraph Co.* 81 N. H. 451, 455, 456.

We do not see how the defendant's rule can be assumed to have been established for the protection of the public at grade crossings so as to be deemed an admission by the defendant that speeds in excess of twenty-five miles an hour at such crossings are inherently dangerous to travellers on the highway. The rule does not purport to regulate speed at crossings as distinguished from other points. The rule applies only to freight trains. It is common knowledge that passenger trains, if not trains of other kinds, habitually traverse grade crossings at far higher speeds than twenty-five miles an hour. The rapid transit demanded by the public could not be furnished if they did not do so. It is at least as reasonable to suppose that the rule was established with reference to the safety of the freight trains themselves at all places, or with reference to operating conditions of some kind peculiar to freight trains, as it is to suppose that this was a measure directed to the protection of travellers upon the highways at grade crossings. Under the principle of the *Stevens* case no foundation has been laid for the contention that violation of the rule was evidence of negligence in favor of these plaintiffs.

Finally the contention is advanced that there was evidence of negligence of the engineer in failing to stop his train when he could see the Peterson automobile proceeding toward the crossing. But it is settled that in the situation here presented the driver of a locomotive, in the absence of any indication to the contrary, may anticipate that the driver of a vehicle upon a highway will stop before entering upon a crossing in front of a train. The engineer is not required to stop his train whenever he sees a traveller upon the highway. *Gannett* v. *Boston & Maine Railroad,* 238 Mass. 125, 131. *Tamkun* v. *Boston & Maine Railroad,* 302 Mass. 59, 62. *Gahagan* v. *Boston & Maine Railroad,* 70 N. H. 441, 451. *Waldron* v. *Boston & Maine Railroad,* 71 N. H. 362, 365, 366. *Morier* v. *Hines,* 81 N. H. 48, 51. *Paulette* v. *Boston & Maine Railroad,* 88 N. H. 10, 12.

*Lavallée* v. *Boston & Maine Railroad,* 89 N. H. 323, 326. There was much evidence that Mrs. Peterson approached the crossing at a moderate rate of speed and slowed down as if she intended to stop. If this was disbelieved there remained no evidence that the defendant's engineer did not do all he could to stop his train as soon as he had reason to believe that Mrs. Peterson was not going to stop her automobile. Under these circumstances failure to stop the train sooner was not evidence of negligence, and the doctrine of the last clear chance as developed in New Hampshire has no application. *Clark* v. *Boston & Maine Railroad,* 87 N. H. 36.

In each case the entry will be

*Exceptions sustained.*
*Judgment for the defendant.*