ETHEL PILGRIM *vs.* DAVID MacGIBBON
(and a companion case [1]).

Middlesex.   November 9, 1942. — February 24, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Conflict of Laws. Negligence,* Gross, Motor vehicle, Use of way.  *Words,*
"Gross negligence."

A decision by the Supreme Court of Nova Scotia affirmed by the Supreme
Court of Canada, that evidence of certain conduct of the operator of
an automobile warranted a finding of "gross negligence" on his part
within a Nova Scotia statute making such negligence a basis for lia-
bility of an operator to a guest injured thereby, required that, in a sub-
sequent action in this Commonwealth against an operator by one
injured while riding as his guest in Nova Scotia where there was
evidence of conduct on his part at least as culpable as that of the
operator in the Nova Scotia case, the issue of the defendant's gross
negligence within such statute be submitted to the jury.

TWO ACTIONS OF TORT.   Writs in the First District Court
of Eastern Middlesex dated June 22, 1939.

Upon removal to the Superior Court, the actions were
tried together before *Donahue, J.*

*G. E. Thompson & E. V. Keville,* for the plaintiff Pilgrim,
were present in court and submitted a brief.

*J. F. Thistle,* for the plaintiff White.

*Joseph P. Sullivan,* for the defendant.

Cox, J.   This is a report of two actions of tort, tried
together to a jury, to recover damages for personal injuries
sustained on August 30, 1938.   Verdicts were returned for
the plaintiffs, but under leave reserved a verdict for the
defendant was entered in each case.   If there was error in
the entry of these verdicts, the verdicts of the jury are to
stand.   Otherwise, the verdicts as entered are to stand.
The cases were submitted to the jury on the third counts,
each of which alleges that the plaintiff, while riding as a

---

[1] The companion case is by Elizabeth White against the same defendant.

passenger and guest in a motor vehicle owned and operated by the defendant in the Province of Nova Scotia, Canada, was injured by reason of the defendant's gross negligence or wilful and wanton misconduct.

The Nova Scotia motor vehicle act, St. 1932, c. 6, § 183, provides, as far as material: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury . . . in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury . . . for which the action is brought." No question is raised that the plaintiffs were not guests within the meaning of this statute, and it is not contended that there was any evidence of wilful and wanton misconduct or that the plaintiffs were guilty of contributory negligence. The only question for determination is whether the trial judge was right in entering verdicts for the defendant on the ground that, as matter of law, there was no evidence that gross negligence of the defendant contributed to the plaintiffs' injuries.

"In determining this question we are bound by the law of . . . [Nova Scotia] in so far as that law establishes the standard of care. If by rule of law in . . . [Nova Scotia] a given set of facts does or does not constitute [gross] negligence we are bound by that rule as to that set of facts. *Smith* v. *Brown,* 302 Mass. 432, 433. *Stiles* v. *Wright,* 308 Mass. 326, 330. But where the law of . . . [Nova Scotia] goes no further than to lay down the general standard of . . . care . . . under the circumstances, while we are bound to observe that standard, we must determine for ourselves in accordance with our own law of procedure whether there is sufficient evidence to take the case to the jury on the question whether the defendant conformed to the standard." *Peterson* v. *Boston & Maine Railroad,* 310 Mass. 45, 47, 48, and cases cited. "Where by the law of the place of wrong, the liability-creating character of the actor's conduct

depends upon the application of a standard of care, and such standard has been defined in particular situations by statute or judicial decision of the law of the place of the actor's conduct, such application of the standard will be made by the forum." Am. Law Inst. Restatement: Conflict of Laws, § 380 (2). Beale, Conflict of Laws, § 380.1. See *Holland* v. *Boston & Maine Railroad*, 279 Mass. 342, 344; *Jackson* v. *Anthony*, 282 Mass. 540, 545; *Fortein* v. *Delaware, Lackawanna & Western Railroad*, 90 N. J. L. 137, 141; *Tobin* v. *Pennsylvania Railroad*, 100 Fed. (2d) 435, 439. Our attention has been called to a decision of the Supreme Court of Nova Scotia, *Murray* v. *McCulloch*, [1941] 3 D. L. R. 42, in which the statute in question was considered. An appeal from this decision was dismissed with costs in the Supreme Court of Canada by a decision reported sub nomine *McCulloch* v. *Murray*, [1942] 2 D. L. R. 179.

The evidence, in its aspects most favorable to the plaintiffs (*Brightman* v. *Blanchette*, 307 Mass. 584, 589), would have warranted the jury in finding the following facts: The day before the plaintiffs were injured they had ridden from New Glasgow to Halifax, a distance of about eighty-five miles, in the defendant's automobile. Mrs. MacGibbon was with them. It had been arranged that they were to visit in Halifax and return to New Glasgow early the next evening, as the defendant had something he wished to do there that evening. They spent the night in Halifax, and on the next day a Mrs. Harper, with whom they were staying, suggested that they take a "little" trip. The defendant did not wish to go and said that "they" had promised to get started home in the early afternoon. The trip, however, was taken, and they did not get back to Mrs. Harper's until about 5:30 P.M. The defendant was very anxious to leave for New Glasgow at once, but Mrs. Harper insisted that they stay for supper, which they did. The defendant's wife told him that there was no sense in hurrying, and that if Mrs. Harper wanted them to stay for supper, she thought they should. "It was settled right there." They finally left for New Glasgow between 7:30 and 7:45 P.M., when it

was "growing dusk," the defendant operating the automobile. The weather was cloudy and overcast, and when they were about ten or fifteen miles from where the accident occurred, it started to rain. It was a heavy drizzle. The surface of the road was wet, and although the automobile was equipped with windshield wipers that were in working order, they were not in operation.

For about five minutes after leaving Halifax the defendant was driving at about thirty-five miles an hour in a district that was thickly settled and where there were intersecting streets. Thereafter, the speed was increased to about forty miles an hour and this continued for about ten miles or so. For two or three miles before reaching the place of the accident, the road was "very curvy." The speed was about fifty-five or sixty miles an hour. The road was macadam, approximately eighteen feet wide, with gravel shoulders that were about three feet wide. It was growing dark, and the lights on the automobile were lighted. During these last two or three miles the automobile, when taking the turns, would swerve, and as these miles were being traversed, the three women remonstrated with the defendant as to the manner in which he was operating the automobile. Mrs. MacGibbon told him not to drive so fast, and he replied that he was driving the automobile. The plaintiff White told him that she was very familiar with the roads and that they were very curvy, and to "please go slow." He made no reply to her, but just kept on driving "fast." When the automobile neared the place of the accident, it swerved from side to side as it went around a curve, and Mrs. MacGibbon asked the defendant to slow down. When he came around a second curve, he turned his head to the right to make some remark, there was another curve, and "he just went right around it and the car left the road and turned over 3 times and landed on its 4 wheels." The automobile swerved first to the left and then to the right, and then the defendant exclaimed: "Oh, Oh." When the defendant turned his head, the speed of the automobile was approximately sixty miles an hour. He turned his head directly around to his wife who was sitting "well" in the

middle of the rear seat, and was in the process of turning his head back to the front as the automobile swerved, went off the road and into a field. There was a drop of "possibly four" feet from the road to the adjoining land, and the automobile travelled about one hundred yards after it left the road. The defendant admitted that the only time he had ever been over the road was on the day before the accident, that his wife did provoke him to some extent when she spoke to him about his driving, and that she "drove from the back seat."

The case of *Murray* v. *McCulloch*, [1941] 3 D. L. R. 42, was one in which the plaintiff, a gratuitous passenger, sought to recover damages for personal injuries sustained by reason of the gross negligence or wilful and wanton misconduct of the defendant who was operating the automobile in which the plaintiff was riding. It was decided, according to the report of the case, on April 26, 1941, although the defendant in the cases at bar, in his brief, states that it was decided on August 16, 1941. Questions were submitted to the jury which answered that the defendant's gross negligence caused the accident, that his gross negligence consisted of reckless driving, and that the defendant was also guilty of wilful and wanton misconduct in that he was not exercising proper care. The jury also found that the accident was not inevitable, that it was not caused by the automobile striking a block of wood on the highway, and they assessed damages. Six judges of the Supreme Court heard this case on appeal from the order of the trial judge dismissing the action. Three of the judges gave their opinions as to the meaning of the words "gross negligence" as appearing in the statute in question. The chief justice was of opinion that the words, "gross negligence or wilful and wanton misconduct," should not be read conjunctively, and that the phrases "gross negligence and wilful and wanton misconduct" are, each of them, intended to represent "different notions of fault." (Page 45.) He then considered the question of gross negligence, with a review of many decisions in the United States, England and Canada. He pointed out that the trial judge had dealt with

the term "gross negligence" by saying, in effect, that the adjective that most fittingly described the conduct of a person who was alleged to have been grossly negligent was the word "reckless." He pointed out that the answer of the jury that gross negligence consisted of reckless driving was, in his opinion, the expression of the opinion of the jury that, considering all the circumstances, the defendant was guilty of negligence that was not slight, but great, and, for that reason, that the plaintiff was entitled to judgment on the findings as to gross negligence already referred to. His ultimate conclusion was that the jury's answers relating to wilful and wanton misconduct, which he held to be intended to state something other than gross negligence, need not be considered; that the question of gross negligence was altogether for the jury, and that he was not prepared to hold that they acted unreasonably in their finding. Two of the judges concurred with the chief justice.

One of the judges was of opinion that "gross negligence" and "wilful and wanton misconduct" connote different mental attitudes, presumably of similar gravity, and that the intention of the statute is to express a standard of care in negative and positive terms, each of which may include the other. He concluded that when, instead of taking reasonable care, the operator of an automobile, in circumstances which showed neither necessity nor excuse, intentionally took great risks which he knew to be dangerous, and in so doing endangered the lives and severely injured those with him in the automobile, the jury might reasonably find him grossly negligent. "It was a question for them, which they established by their finding: 'Reckless driving.'" (Page 57.) He was of opinion that the plaintiff should have judgment on the findings of the jury. The third judge who went into the question of gross negligence was of opinion that there was evidence upon which the jury could find "reckless driving" amounting to gross negligence. The sixth judge agreed that the plaintiff was entitled to judgment.

In the circumstances of the *Murray* case it is not entirely easy to determine just how the words "gross negligence"

were defined. It is to be borne in mind, however, that in that case the court was particularly concerned with the question whether the answer of the jury that the defendant's gross negligence consisted of "reckless driving" warranted judgment for the plaintiff. All of the judges were of opinion that the plaintiff was entitled to judgment on this finding, that is, that on the permissible findings the defendant was guilty of gross negligence. It is to be observed that the Nova Scotia court did not refer in any way to our own case of *Altman* v. *Aronson*, 231 Mass. 588, in which Chief Justice Rugg formulated a definition of gross negligence.

In the cases at bar this court must observe the standard of care prescribed by the statute in question of Nova Scotia, that is, that the defendant is liable for gross negligence. *Hall* v. *Hamel*, 244 Mass. 464. *Jackson* v. *Anthony*, 282 Mass. 540, 545. If the Supreme Court of Nova Scotia, in the *Murray* case, had gone no further than to construe the term "gross negligence" in the manner in which it was construed by the several judges in general terms, that is, had merely laid down the general standard of care required, the question would remain in the cases at bar whether, according to our own law, the permissible findings required a submission of the cases to the jury or whether the cases should be withdrawn from the jury for the reason that there was not sufficient evidence to warrant it in finding a breach of the standard of care, as defined by the Nova Scotia court. *Peterson* v. *Boston & Maine Railroad*, 310 Mass. 45, 47. But that court in the *Murray* case did more than define in general terms the standard of care required by the statute. It applied such standard of "gross negligence" as construed by the several judges to the particular facts disclosed in the case, and decided that, in the circumstances of that case, the plaintiff was entitled to go to the jury on the issue of gross negligence, and that the defendant was not entitled to a verdict as matter of law. It has been adjudicated in Nova Scotia that, on facts such as those disclosed in the *Murray* case, a finding of gross negligence may be made by a jury. We are entitled to avail ourselves

of that decision in so far as it sheds light on the definition of "gross negligence" as used in the Nova Scotia statute. It is again to be observed that in that case, irrespective of any divergence in the opinions of the judges as to the definition to be given to the term "gross negligence," there was a unanimity of opinion that, under any of these respective constructions of that term, the jury could, on the evidence, find a violation of the duty owed by the defendant to the plaintiff.

We are of opinion that the same degree, at least, of culpability on the part of the defendant in the cases at bar is disclosed as could have been found on the part of the defendant in the *Murray* case. In that case the plaintiff was riding with the defendant as his guest. They and a third person were sitting in the front seat of the automobile. The day was "fine and bright." The road upon which they were travelling was an ordinary, gravelled, secondary highway in good condition. After travelling for about a quarter of a mile on a practically straight, good road, the automobile suddenly swerved to the left and struck the end of a "small" concrete culvert in the road, turned completely over in the ditch, and landed on its wheels again at the side of the road. The road at the place of the accident was twenty-three feet wide, and the culvert seventeen feet "wide" [long?]. The only controversy was as to the speed, the manner of the defendant's driving, and the cause of the sudden swerve to the left. There was evidence that the defendant was driving at a speed of fifty miles an hour; that several times, in going around turns, he went too far to the right and into the ditch and right up again on the road; that several times the plaintiff told him that she was "scared"; that, in approaching the culvert, he did not deliberately drive to the left, but there was a rise in the road "and he had to 'turn his wheel' and was going too fast and lost control of the car." There was evidence that the swerve to the left was caused by running over a block of wood on the highway near the culvert, with the result that the steering gear was "jammed." The jury, however, found, in answer to a question submitted to it, that the

accident was not caused by striking a block of wood on the highway. It does not appear in the cases at bar, as it does in the *Murray* case, that the defendant's automobile went off the road at any time prior to the accident, but there was evidence that "for 2 or 3 miles before the scene of the accident," the automobile "when taking the turns . . . would swerve." In the *Murray* case, the plaintiff was injured at about 4:30 P.M. on October 16, and the day was "fine and bright." In the cases at bar "it was growing dusk." There was a heavy drizzle. The surface of the road was wet, and the defendant's windshield wipers were not in operation. In the *Murray* case the road was twenty-three feet wide, and in the cases at bar it was eighteen feet wide, "just about wide enough for two cars." In the *Murray* case the road was practically straight, while in the cases at bar "for 2 or 3 miles before the scene of the accident [it] was . . . very curvy." Moreover, in the cases at bar, the defendant, while going around a succession of curves at approximately sixty miles an hour, turned his head directly around to the middle of the back seat and was in the process of turning it back when the accident occurred. In the *Murray* case the speed was fifty miles an hour on a "practically straight, good road," while in the cases at bar the speed was approximately sixty miles an hour on a "very curvy road."

We conclude, therefore, that the decision in the *Murray* case required, in the cases at bar, the submission to the jury of the question whether the defendant was grossly negligent under the Nova Scotia statute.

We think it is apparent that the trial judge did not have the benefit of the decision in the *Murray* case. Nevertheless, it must be held to govern the rights of the parties. See *Reale* v. *Judges of the Superior Court*, 265 Mass. 135, 139; *Frank* v. *Mangum*, 237 U. S. 309, 344.

It follows that judgments must be entered for the plaintiffs on the verdicts of the jury.

*So ordered.*