ANNIE M. THORNHILL *vs.* CARPENTER-MORTON COMPANY.

Worcester.    November 20, 1914. — April 2, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Dangerous Substance. Negligence,* In compounding dangerous substance. *Evidence,* Matters of common knowledge, Opinion: experts, Experiments. *Practice, Civil,* Conduct of trial, Demurrer, Appeal.

If a manufacturer of and dealer in paints, oils, varnishes and oil stains, puts on the market, without giving any notice of the inflammable and dangerous character of the substance, cans bearing his name as the manufacturer containing "walnut oil stain," which has been made for him by his order and at least fifty per cent of which is composed of volatile and inflammable ingredients that on exposure to the air quickly will vaporize, producing a gas that will ignite instantly on coming in contact with the flame of a lighted match, and if, when a purchaser in the market of one of these cans is engaged in applying its contents to the floor of a room, he finds it necessary to light a match and instantly there is an explosion of volatile vapor followed by the immediate ignition of the entire surface to which the stain has been applied, causing personal injury to the wife of the purchaser when she is in the exercise of due care, the purchaser's wife can maintain an action for her injuries against such dealer who put the stain on the market.

It is to be assumed that jurors as a matter of common knowledge are familiar with the fact that it is customary to use oil stains upon floors and know that such oil stains after being applied to floors ordinarily do not explode and ignite when the person engaged in using the stain happens to light a match.

If, when a woman sees the portion of a floor to which her husband has applied a walnut oil stain from a can of that substance suddenly burst into flame, she seizes the can and tries to extinguish the fire, this action taken in an emergency is not negligence as matter of law and does not deprive her of the right of going to the jury in an action brought by her against the dealer who put the explosive and inflammable substance on the market to recover for her injuries from the flames.

In an action for personal injuries caused by the sudden ignition of a walnut oil stain when it was being applied to a floor, an expert properly qualified may be allowed to give his opinion as to the distance from the floor at which ignition of the inflammable substance would be produced by a lighted match.

At the trial of an action for personal injuries caused by the sudden ignition of a walnut oil stain when it was being applied to a floor, it is within the discretion of the presiding judge to refuse to permit an experiment to be tried by lighting and extinguishing a can of the inflammable oil stain in the presence of the jury, where the conditions under which the accident occurred are so different from the conditions in the proposed experiment that it cannot assist the jury unless supplemented by collateral evidence.

An appeal of a defendant from an order overruling his demurrer to certain counts

of a declaration, to which other counts afterwards were added by amendment, is disposed of by an order of the presiding judge directing the jury to return a verdict for the defendant on the counts demurred to, thus making the demurrer immaterial.

TORT against the alleged manufacturer and seller of a certain walnut oil stain for personal injuries sustained by the plaintiff on May 25, 1908, from the sudden ignition of the volatile and inflammable gases contained in the stain when a match was lighted in the room where the plaintiff's husband was applying the stain to the floor, the defendant having put the stain on the market, where it was bought by the plaintiff's husband, without giving any notice of its inflammable and dangerous character of which the plaintiff and her husband were ignorant. Writ dated March 2, 1909.

The declaration originally contained two counts. The defendant demurred. There was a hearing on the demurrer before *Richardson,* J., who made an order overruling the demurrer, from which the defendant appealed. Later the case was tried before *Quinn,* J. At the opening of the trial the plaintiff was allowed to amend her declaration by adding a third and a fourth count. The facts that could have been found upon the evidence are stated in the opinion, where also the rulings of the judge in regard to evidence to which the defendant excepted are described.

At the close of the evidence the defendant asked the judge to make twelve rulings. Of these the judge gave as instructions to the jury the tenth and eleventh rulings requested, which were as follows:

"10. The plaintiff cannot recover on the first and second counts of the amended declaration.

"11. The plaintiff cannot recover without showing that both she and her husband were in the exercise of due care."

The other rulings asked for by the defendant were as follows:

"1. On all the evidence the plaintiff cannot recover.

"2. On the pleadings the plaintiff is not entitled to recover.

"3. The plaintiff cannot recover in this case without proving that the defendant was the actual manufacturer of the stain in question.

"4. Even if the jury should find that the defendant caused

said stain to be labeled as manufactured by it pursuant to a trade custom, when in fact the same was manufactured by some other person or corporation, such fact would not render the defendant liable even if the real manufacturer might be held liable.

"5. If the jury should find that the defendant purchased said stain in the usual course of business from a well known manufacturer, believing, and having a right to believe, that said stain was an ordinary article of paint or staining merchandise, and sold the same in the usual course of its business as a dealer in paints, the defendant is not liable.

"6. The manufacturer of an article of commerce such as the stain in question cannot be held responsible for injuries suffered by a person buying such stain from a third party, unless the plaintiff shall show that the manufacturer actually knew that said stain was improperly made in such way as to be dangerous to persons using such article in a proper way for the purpose for which it was intended.

"7. The gist of an action brought by a person injured through an alleged defect in an article of ordinary merchandise [not peculiarly dangerous], not purchased by the person injured from the manufacturer, consists of guilty knowledge on the part of the manufacturer of the dangerous nature of the article manufactured for general sale.

"8. The manufacturer of an article of merchandise, such as this stain, is not responsible in damages to any persons who may receive injuries because of its defective composition or construction, to which the said article is not by such manufacturer sold, even if the manufacturer might, by the exercise of reasonable diligence, have discovered such defective composition.

"9. It is a matter of common knowledge that stains and paint products generally contain oils and other inflammables, and the plaintiff must be held to have known that which is matter of general knowledge."

"12. There is no evidence warranting the finding that the plaintiff was in the exercise of due care."

The judge gave the seventh ruling requested as an instruction to the jury after inserting the words "not peculiarly dangerous" which are printed above enclosed in brackets. He refused to make any of the other rulings requested excepting the tenth and

eleventh as printed above. He ordered a verdict for the defendant on the first and second counts and submitted the case to the jury on the third and fourth counts of the declaration. The jury on those counts returned a verdict for the plaintiff in the sum of $2,500; and the defendant alleged exceptions.

*G. W. Anderson,* for the defendant.

*J. A. Thayer,* for the plaintiff.

BRALEY, J. It was uncontroverted that the defendant, a manufacturer and dealer in paints, oils, varnishes and oil stains, instead of making it, obtained the walnut oil stain from another company which it put upon the market, although the label on the cans, with the directions for use, represented that the stain was of its own manufacture.

The plaintiff's husband bought a can of this stain and while applying the contents in the ordinary way to the floor of a room, where because of gathering darkness it became necessary to light the chandelier, drew a match across his clothing, and the jury could find that as the match flamed there was an explosion of volatile vapor given off by the stain, followed simultaneously by the ignition of the entire surface to which it had been applied.

It is immaterial that previous to the accident the stain, whether in process of manufacture or use, never had ignited, for the jury would have been warranted in finding upon conflicting evidence that at least fifty per cent of the stain was composed of volatile oil, turpentine and petroleum products, including benzine, and these ingredients, especially the benzine, would quickly vaporize on exposure to the air, producing a gas which would instantly ignite on coming in contact with a lighted match. *Dulligan* v. *Barber Asphalt Paving Co.* 201 Mass. 227, 231. *Gately* v. *Taylor,* 211 Mass. 60, 62.

While no contractual relation existed between the defendant and the plaintiff or her husband, the jury could say that the stain had been represented as a "walnut stain," designed for certain uses, but because of an unusually high degree of inflammability it was explosive and might cause serious personal injuries by taking fire when used under ordinary circumstances, one of which might be the necessity of using artificial light during application.

It is no justification that the defendant procured the stain instead of having it compounded on its own premises. The jury

could find that, if the defendant was not the originator, those who prepared the mixture simply executed the defendant's orders, and its representations to the purchasing public or consumer, without any notice of the dangerous character of the compound, that it was the manufacturer must be taken as essentially true. *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64, 68.  See *Murphy* v. *Arnson*, 96 U. S. 131.

It is urgently pressed that even if the defendant is held to be the manufacturer, it is not culpable unless shown to have possessed actual knowledge of the dangerous qualities of the stain.  Proof, however, of actual knowledge is not required where the article is so made up as to be inherently harmful.  The manufacturer who puts or causes the component parts to be put together, or accepts them as his own after they are assembled, must be presumed to know the nature and quality of the resultant compound which he solicits the public to purchase.  The defendant's product, it is true, was placed upon the market and sold as an oil stain, yet it is not the name of the article which determines its qualities.  If the parts are not compounded in proper and safe proportions, while it may be called a "stain," the excess of benzine, or other volatile oils, as we have said, could be found by the jury to have made it a highly inflammable and dangerous fluid or substance.

The distinction between the case at bar and *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341, is plain.  In that case the defendant was a manufacturer of emery wheels, and the plaintiff while at work was injured by the explosion of a wheel which his employer had bought and installed.  It was held that he could not recover in the absence of knowledge on the part of the defendant that the wheel was defective when it left the factory.  But an emery wheel which may explode when revolving at high speed is not recognized as intrinsically harmful, and the manufacturer who makes and vends articles of ordinary use, which of themselves are harmless, is ordinarily held not to be answerable if when in use personal injuries are caused by reason of their defective construction. *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341, 343, and cases cited.  Nor would a retail dealer or wholesale jobber under the circumstances disclosed be liable.

It is settled that, whether the defendant was responsible in damages to the plaintiff because of the inherently dangerous prop-

erties of its article denominated a stain of which no notice was given and of which the purchaser had no knowledge, was upon all the evidence in the record a question of fact for the jury under appropriate instructions. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 444, and cases cited. *Gately* v. *Taylor,* 211 Mass. 60. *Wilson* v. *J. G. & B. S. Ferguson Co.* 214 Mass. 265, 266. *Roberts* v. *Anheuser Busch Brewing Association,* 215 Mass. 341. *Ellis* v. *Republic Oil Co.* 133 Iowa, 11. *Waters Pierce Oil Co.* v. *Davis,* 24 Tex. Civ. App. 508. *Standard Oil Co.* v. *Parrish,* 76 C. C. A. 405. *Riggs* v. *Standard Oil Co.* 130 Fed. Rep. 199.

The distinctions to which we have adverted were clearly covered by the full, careful and sufficient instructions to the jury. The third and fourth counts under which the case was submitted to them are stated to be for one and the same cause of action, and having aptly alleged that the defendant knew, or in the exercise of reasonable care ought to have known, that the stain as compounded and sold without notice of its nature and qualities was inherently dangerous, the instructions requested as framed in so far as applicable to the question of its liability could not have been given. *Little* v. *Blunt,* 13 Pick. 473, 476. *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64, 67, 68. *Colvin* v. *Peabody,* 155 Mass. 104, 107. *Goodhue* v. *Hartford Fire Ins. Co.* 175 Mass. 187, 188.

The defendant also maintains that the plaintiff and her husband acted carelessly and that the first request, that on all the evidence she could not recover, was refused wrongly.

It is to be presumed that the jurors from common knowledge were familiar with the customary use of oil stains, and that ordinarily such stains did not ignite and explode if the workman, while applying them, happened to light a match, and the plaintiff's husband is not shown to have had any greater information. If he was to continue his work the room must be lighted, and the mode of lighting was sufficiently common to justify a finding that he was not careless.

Nor can it be said as matter of law that the plaintiff's conduct in seizing the can and endeavoring to extinguish the fire, causing injuries from burns for which she seeks damages, shows a lack of reasonable precaution. It well may have seemed to her that not only her husband's safety, but their home, was imperilled

and prompt action must be taken. The deliberation with which foreseen conditions in human affairs can be met or avoided is one thing, the action taken in an emergency is quite another thing.

The jury, to whom this question also was left properly under instructions which fully guarded the defendant's rights, were to determine whether under the circumstances the plaintiff used reasonable care. *Hanley* v. *Boston Elevated Railway*, 201 Mass. 55, 58. *Steverman* v. *Boston Elevated Railway*, 205 Mass. 508, 513. *Gately* v. *Taylor*, 211 Mass. 60.

The exceptions to the admission and exclusion of evidence in so far as argued remain. The plaintiff's expert, a professor in chemistry, whose qualifications rendered his evidence admissible in the opinion of the presiding judge who does not seem to have exceeded his discretionary powers, was properly permitted to state the result of his analysis of the stain, and his tests to ascertain the distance at which ignition would be produced.

If the form in which some of his answers as first given was objectionable, the objection was removed when in reply to unexceptional questions, he gave his opinion as a qualified expert, the weight of which was for the jury. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527, 533. *Bierce* v. *Stocking*, 11 Gray, 174.

The plaintiff's expert having testified that a can of the stain could be lighted in the presence of the jury and easily extinguished, the defendant offered to make the experiment, but the evidence was excluded. The inciting cause of the explosion does not seem to have been questioned, but the conditions under which it occurred were so manifestly different from the conditions when the experiment was proposed, that it would not have assisted the jury unless supplemented by collateral inquiries. The admission of such evidence being largely within the discretion of the judge, we cannot say that his ruling was clearly wrong. *Dow* v. *Bulfinch*, 192 Mass. 281, 285. *Field* v. *Gowdy*, 199 Mass. 568. *Commonwealth* v. *Buxton*, 205 Mass. 49.

The jury by order of the court having returned a verdict for the defendant on the first and second counts, its appeal from the order overruling the demurrer as to those counts is disposed of; and finding no error of law, the exceptions must be overruled.

*So ordered.*