ANNA DRYDEN, APPELLEE, V. OMAHA STEEL WORKS, APPELLANT.

26 N. W. 2d 293

Filed February 21, 1947. No. 32201.

*Spier, Ramsey & Ellick,* for appellant.

*John A. McKenzie,* for appellee.

(1)

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL, and WENKE, JJ., and NUSS, District Judge.

CARTER, J.

This is a suit for the collection of benefits alleged to be due under the Workmen's Compensation Act. The district court found for the plaintiff and the employer appeals.

On April 29, 1943, Joseph R. Dryden was in the employ of the defendant, Omaha Steel Works, at which time he slipped and fell backwards, striking the back of his head on the edge of a metal crane support. He sustained lacerations on the back of his head which required immediate medical treatment, but did not result in any immediate disability. On May 7, 1943, an infection developed at the point of the injury, which required hospitalization and medical treatment. He remained in the hospital until May 28, 1943, on which date he returned home. On June 12, 1943, he returned to work. During his stay in the hospital he had chills and high fever, and a severe swelling of the scalp and face. The trouble was diagnosed as erysipelas and became so severe that the patient was at the point of death. Benefits due under the Workmen's Compensation Act were paid by the employer for this period.

On June 12, 1943, Dryden resumed his work. He worked steadily, putting in much overtime, until late in December 1944, when he was directed by the company's doctor to desist. On January 6, 1945, he was confined to his bed. On February 4, 1945, he was taken to a hospital. He died on February 11, 1945, of pulmonary tuberculosis. It is the contention of the plaintiff that the accident of April 29, 1943, and the infection subsequently growing therefrom lighted up the tuberculosis latently existing, and caused Dryden's death.

While it is true that it was not determined that Dryden was suffering from tuberculosis until February 9, 1945, there is no dispute in the medical testimony that pul-

monary tuberculosis was the cause of death. The evidence shows that Dr. Leo V. Hughes was the company's physician in charge of the case. It appears that on June 20, 1944, Dr. Hughes detected evidences of lung trouble and referred the case to Dr. E. L. MacQuiddy. Dr. MacQuiddy was unable to find any tubercular bacteria and concluded that Dryden was suffering from a fungus infection of the lungs of which ample evidence was found. It was not until February 9, 1945, that positive evidence of tuberculosis was discovered.

There is evidence in the record to the effect that as early as 1929, Dryden had a hacking cough, pain in the chest, and a shortness of breath, symptoms usually associated with tuberculosis but not conclusive of it. They are also symptoms of the fungus infection of the lungs first found by Dr. MacQuiddy. The evidence also shows a pronounced loss of weight from the time of the illness shortly following the accident in 1943. Dryden weighed 220 pounds before the accident in 1943, in the spring of 1944 he weighed 189 pounds, in November of 1944 he weighed 168 pounds, and on February 4, 1945, he weighed 138 pounds. There is no dispute in the evidence concerning the fact that Dryden lost weight substantially in this manner.

There is medical testimony in the record to the effect that the situation above recited indicates the existence of a latent tubercular condition on the date of the accident in 1943. Dr. William J. Nolan testified that the evidences shown to exist by the autopsy report indicate that the tubercular condition had existed for at least two years. Dr. Harry E. McGee testified that in 1929 he was the Dryden family physician. During that year, he said, evidences of a tubercular condition existed which in the light of subsequent events indicated that Dryden then had a latent tubercular affliction. Anna Dryden, wife of Joseph R. Dryden, testified that he not only had a hacking cough, pain in the chest, and shortness of breath prior to the infection

growing out of the accident in 1943, but that he had in addition thereto after his return to work on June 12, 1943, night sweats, a poor appetite, a steady loss of weight, and a continued tiredness. We think this evidence is sufficient to sustain a finding that a latent condition of tuberculosis existed on April 29, 1943, the date of the accident.

A more serious question is presented as to whether the evidence is sufficient to sustain a finding that the infection following the accident lighted up and activated the latent tubercular condition and thereby brought about Dryden's death on February 11, 1945. The evidence of Anna 'Dryden that Dryden was troubled with night sweats, a poor appetite, a gradual and pronounced loss of weight, considerable sputum, pain in the chest, and a hacking cough, tends to support this allegation. The medical experts seem to be in accord that these symptoms, taken together and considered in retrospect, indicate a tubercular condition. Dr. Nolan testified that tuberculosis can exist in a dormant condition for several years and then through an injury or disease, tending to lower the vitality and resistance of the afflicted person, the inactive germ may suddenly spring to life and produce the disease in an active form, its severity depending upon the extent to which the patient's vitality has been lowered and the virility of the organism which is the source of the disease. He testified that the infection following the accident in 1943 could well have been such an activating agency and in his opinion did light up the latent tubercular condition. The evidence of Dr. McGee is substantially to the same effect. The undisputed evidence of Anna Dryden and the foregoing expert medical evidence is sufficient to sustain the finding of a causal connection between the accident and the death. Dr. MacQuiddy agrees that the infection following the accident of April 29, 1943, was sufficient to light up a latent tubercular condition, but that it ordinarily would have occurred much sooner than in the present instance. He

testified that any opinion as to whether it did light up and activate the disease in the present case would be speculative and conjectural in view of the fulminating type of tuberculosis which Dryden had. A consideration of all the evidence leads us to the conclusion that it is sufficient to sustain a finding that Dryden was afflicted with a latent tuberculosis on April 29, 1943, which was activated and lighted up by the infection growing out of the accident, and caused the death of Dryden within the meaning of the Workmen's Compensation Act.

It is a well-established rule in this state that to sustain an award in a workmen's compensation case it is sufficient to show that an injury, resulting from an accident arising out of and in the course of the employment, and preexisting disease combined to produce disability or death. Cunningham v. Brewer, 144 Neb. 211, 16 N. W. 2d 533.

It is urged that the claim is barred by the statute of limitations governing such claims. § 48-137, R. S. 1943. Under this section a suit to recover compensation benefits must be commenced within one year from the date of the accident. With reference to latent disabilities growing out of an accident occurring in the course of the employment the rule is: When an employee receives an accidental injury arising out of and in the course of the employment which activates a dormant disease, the failure to bring suit within a year is not a bar if the action is commenced within one year after the employee acquires knowledge of a compensable disability. Clary v. R. S. Proudfit Co., 124 Neb. 582, 247 N. W. 417; Lind v. Nebraska National Guard, 144 Neb. 122, 12 N. W. 2d 652.

As heretofore set forth, Dryden returned to work on June 12, 1943, it being supposed that he had recovered from the accident of April 29, 1943, and the infection which followed it. He worked continuously from that date until late in December 1944. Even though he was under a physician's care a good share of that period, the source of his trouble was not discovered. It is rea-

6

sonable to assume, we think, that Dryden had no reasonable basis for supposing that his trouble was connected with the accident he sustained in April 1943, when the physicians in charge were unable to make a correct diagnosis of his case. It was not until February 9, 1945, two days before Dryden's death, that it was determined that he was suffering with pulmonary tuberculosis. Until the true nature of the disease was discovered, neither Dryden, nor those succeeding to his interests after his death, had any way of determining whether the disease stemmed from, or was activated by, the injuries sustained in the previous accident. "Within the meaning of the law barring claims for compensation of a workman, if not made within six months, a latent accidental injury, seeming at first to be trifling and noncompensatory, but subsequently resulting in a progressive disease and a disability, occurs when its true nature is discovered by him or when the diseased condition culminates in disability." Clary v. R. S. Proudfit Co., *supra*. The same rule applies to the filing of the petition as to the giving of notice. The fact that Dryden worked steadily at his employment to within 50 days of his death is consistent with the view that he was oblivious of the true nature of the disease and of any reasonable notice that it was connected with the accident. In addition thereto, the record shows that plaintiff inquired of Dr. Hughes, the employer's physician, in January 1945, as to whether Dryden then had a compensable disability, and he informed her that there was no connection between the then present disease and the injury sustained in April 1943. This opinion was undoubtedly founded upon an incorrect or incomplete diagnosis of the case, but it was one upon which she could be expected to rely. The plaintiff cannot be held to a greater degree of knowledge of the case than the company's physicians had. The petition was filed in the compensation court on February 9, 1946. Consequently, it was filed within one year from the time of the discovery of the true nature of

Dryden's condition and its connection with the accident.
AFFIRMED.