**SYLVANIA ELECTRIC PRODUCTS, Inc.,
Defendant, Appellant,**

v.

**Irene BARKER, Executrix,
Plaintiff, Appellee.**

**Irene BARKER, Executrix, Plaintiff,
Appellant,**

v.

**SYLVANIA ELECTRIC PRODUCTS,
Inc., Defendant, Appellee.**

Nos. 4992–4994.

United States Court of Appeals
First Circuit.

Dec. 20, 1955.

Writ of Certiorari Denied
March 12, 1956.

See 76 S.Ct. 475.

Thomas H. Mahony, Boston, Mass., for Sylvania Electric Products, Inc.

Peter E. Marchetti and Harry B. Otis, Omaha, Neb., with whom Thomas L. Mackin, Boston, Mass., and A. Sheppard Taylor, Omaha, Neb., were on brief for Irene Barker, Executrix.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

These three appeals from two judgments entered on verdicts returned by a jury for the plaintiff present several questions of law both substantive and procedural. They arise out of the facts stated below in the light most favorable to the plaintiff.

Irene Barker, the plaintiff and the appellee in Nos. 4992 and 4993, is a citizen of Nebraska and the widow and executrix by appointment of the appropriate courts of both Nebraska and Massachusetts of Rexford L. Barker who, during his lifetime, was also a citizen of Nebraska. The latter, who will be referred to hereinafter as the decedent, was a bender of glass tubing used in making neon signs, and from the mid-1930's on he was employed in that capacity by Neon Products Company, Inc., of Omaha, Nebraska. His work consisted in plugging one end of a glass tube and blowing into the other end with his mouth to create pressure in the tube so that it would not kink or collapse while it was being heated in a gas flame to a malleable state and bent into the shape desired. It appears that when a tube cooled and the blower's lips were removed the heated air in the tube being under pressure blew back against the blower's lips, and it would seem to some extent into the blower's mouth.

During the early years of the decedent's employment only plain glass tubing was used. But starting about 1941 glass tubing coated on the inside with a compound containing beryllium came into use. At first this coating gave the appearance of having been painted on, and it did not slough off during the bending process, although it did have some tendency to flake off after a sign made with such tubing had burned for a time. During 1944, perhaps to remedy this defect, a new type of coated tubing came into use. This tubing was also coated on the inside with a beryllium compound but the coating was powdery and as a result it had a tendency to slough off during the heating and bending process. Thus when there was a blow-back the blower got some of the powder on his lips and in his mouth.

The decedent did no tube blowing in 1945 but worked outside during that entire year erecting and repairing signs. He resumed blowing tubes in 1946, and early in that year his employer, while temporarily unable to obtain tubes from its usual source, General Electric Company—from which it had bought some forty to fifty thousand feet of coated tubing from 1944 to 1948—purchased about forty-five hundred feet of beryllium coated tubing manufactured by the defendant, Sylvania Electric Products, Inc., a Massachusetts corporation. All but two or three hundred feet of this Sylvania tubing was fabricated into signs in 1946 and the decedent blew most if not all of it.

Late in 1947 the decedent began to notice shortness of breath and coughing, and early in 1948 he sought medical as-

sistance. The first two doctors he consulted gave him no help but later in the year, about November, a third doctor, after a thorough study of the decedent's symptoms and medical history and exhaustive laboratory and x-ray tests, diagnosed the trouble as berylliosis, a chronic disease of the lungs caused by inhaling particles of beryllium.[1] In the meantime, however, in September, the decedent had had to quit work because of his failing health.

Late in 1948 or early in 1949 the decedent brought an action against his employer and its insurance carrier in the appropriate local court in Nebraska to recover under the Nebraska Workmen's Compensation Act for his total disability. In July 1949 he was awarded compensation and the defendants appealed. In November both he and the defendants applied to the court jointly for permission to settle for a lump sum payment of $3,-750, and about two weeks later their petition was approved. · The court in its decree approving the settlement found that the decedent was "fully informed in the premises" and was "acting solely upon his own information and upon the advice of his own counsel after extended and exhaustive consideration of the entire matter and [was] not acting upon representations of the defendants or any of their representatives." And in paragraph III of both the application for leave to settle and the decree approving the application it is stated:

"That plaintiff avers that shortly prior to September, 1948, he contracted an occupational disease known as berylliosis and consisting of a fibrosis of lung tissue, resulting from exposure to florescent powders containing beryllium, and that said beryllium poisoning culminated on or about September 13, 1948 in permanent total disability. That plaintiff stipulates that his exposure to said occupational disease was at least 40% contracted and incurred during a period prior to the time when the Occupational Disease Statute of Nebraska became effective,[2] and that at least 40% of his disability and medical expenses are not covered by said Statute, and that defendants are therefore not liable for at least 40% of the full benefits scheduled in said Statute."

The following year the decedent made a claim against the General Electric Company to recover damages for the same total and permanent disability. This claim was settled in May, 1950, for $17,500 and the parties entered into an agreement and release which in some respects resembles a covenant not to sue. At any rate it purports to settle only the decedent's claim against General Electric Company and expressly reserves "all rights, claims and demands that he may have against other suppliers of material to Neon Products Company." At the same time the plaintiff herself, both individually and as guardian of her minor son, executed similar agreements and releases with General Electric in consideration of $2,000 and $500 respectively.

Three months later, in August 1950, the decedent brought suit in the court below under its diversity jurisdiction against Sylvania Electric Products, Inc., to recover for the same total and permanent disability. He died on September 12, 1952, before the case was reached for trial and the action was prosecuted thereafter by his widow in her capacity of executrix. This case on appeal is No. 4992 on our docket. On February 12, 1954, the executrix also brought suit against the defendant in the same court under the Nebraska death statute and this case on appeal bears our docket number 4993. The actions were consolidated below for trial by jury, the jury returned verdicts for the plaintiff, and the defendant thereupon took the present appeals from the judgments entered on the verdicts. Aft-

---

1. The jury found specifically that by December 1st, 1948 the decedent knew or should have known that he was suffering from the disease.

2. Counsel agree that this statute became effective in August 1943.

er the judgments were entered the plaintiff moved that interest be added to the amount of each judgment calculated at six per cent from the dates of the respective writs. These motions were denied and the plaintiff appealed but later abandoned her appeal in the death case. Her appeal in the personal injury case is No. 4994.

Sylvania Electric Products, Inc., as appellant, contends that the application under oath for permission to settle the Nebraska workmen's compensation case for a lump sum payment, and the Nebraska court's decree thereon, establish conclusively that the decedent had and knew that he had berylliosis at least as early as August 1943. It rests three arguments on this contention. First, it says that its fault, if any, could not be causal, for none of its tubing was used by the decedent's employer until 1946. Second, it says that the decedent's cause of action for personal injuries prosecuted after his death by the plaintiff as executrix is barred by the Nebraska four-year statute of limitations, Rev.Stats. of Neb.1943 (1948 Ed.) § 25–207, which applies because of the provision in the Massachusetts statute of limitations, General Laws, Ch. 260, § 9, that, "no action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein." And third, it says that the statutory bar to the maintenance of the action for personal injuries also bars the death action, because the Nebraska death statute provides that the cause of action for wrongful death permits such actions only if the party fatally injured could have maintained an action and recovered damages had he lived.

■■ We do not pause to consider these arguments in detail for the foundation upon which they rest is unsound. The judgment of the Nebraska court in the workmen's compensation case is not binding here under the doctrine of *res judicata* because that was a suit against different defendants—the decedent's employer and its insurance carrier. Nor does the joint application for leave to set-

tle the compensation case for a lump sum payment require the finding that the decedent was suffering from berylliosis prior to 1943. The statement quoted above from the application signed by the decedent is that his exposure to berylliosis began prior to 1943, but that he did not contract the disease until "shortly prior to September, 1948." This is not a statement that he was suffering, and knew that he was suffering, from berylliosis before 1943. But, even if it could be construed as a statement to that effect, it would not conclusively bind the plaintiff. So construed it would be admissible as a prior contradictory statement but as such its only use would be to detract from the credibility of the decedent's contradictory statements in his deposition put into evidence at the trial. It would also be admissible as a declaration against interest. As such it might indicate affirmatively that the decedent had contracted berylliosis prior to 1943. Still it would constitute at the most only contradictory evidence which the jury could reject in favor of the evidence tending to show that the decedent's berylliosis did not manifest itself until some time late in 1947 or early in 1948, although insofar as it was caused by the defendant's tubing it must have been caused sometime in 1946.

■ This raises the question of when the decedent's cause of action accrued under the law of Nebraska. For if it accrued prior to August 1946 his action for personal injuries brought in August 1950 is barred by the Nebraska four-year statute of limitations which applies because of the provision of the Massachusetts statute of limitations cited above.

■■ Undoubtedly the decedent was exposed to the beryllium in the defendant's tubes before August 1946. But so far as the evidence in the record is concerned, he was similarly exposed after that date. But the question of the precise time when the decedent actually contracted the disease from which he died need not detain us, for what apparently controls under the Nebraska law is the time when the decedent knew that he had

the disease. The Nebraska court has repeatedly held in workmen's compensation cases that the statutory period within which such actions must be brought does not begin to run until the employee acquires knowledge of a compensable disability, see the recent case of Dryden v. Omaha Steel Works, 1947, 148 Neb. 1, 26 N.W.2d 293, and from this we assume, in the absence of authority to the contrary, that it would apply the same liberal rule in actions of tort like the present. See Urie v. Thompson, Trustee, 1949, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282. Thus, since the jury found specially that the decedent did not know that he had berylliosis until the first of December 1948, it follows that his personal injury action was not barred by the Nebraska four-year statute of limitations.

We turn now to the question of the sufficiency of the evidence to support the verdicts for the plaintiff.

■ There was evidence from which the jury could reasonably find that the decedent without knowing it contracted berylliosis in 1946, that his disease was caused in part by blowing tubes during that year manufactured by the defendant, that his disease manifested itself late in 1947 or early in 1948, that the decedent became totally incapacitated by it in mid-September 1948, that his disease was not diagnosed until some two months later, and that after its onset it progressed gradually until it caused the decedent's death on September 12, 1952.

We may assume that the defendant either knew or ought to have known the uses to which its beryllium coated tubes would be put, the method commonly used in fabricating them for their intended purpose, and that in their fabrication beryllium particles would be deposited on the workmen's lips and in their mouths. But neither the plaintiff nor the defendant introduced any evidence that in 1946 the defendant knew or was chargeable with knowledge that inhalation of beryl-

lium was dangerous to health. Indeed, it would seem from Harman v. Mitcham Works, Ltd., decided by the Supreme Court of Judicature, Court of Appeal, on June 21, 1955, that it may not have been until after 1946 that any one had any occasion whatever to believe that inhalation of beryllium particles would cause chronic disease of the lungs. Is this lack of direct evidence in the record that the defendant either knew or at least ought to have suspected that beryllium posed a danger to health fatal to the plaintiff's cases?

■■ The nature and extent of the defendant's liability as the manufacturer of the coated neon tubing involved is, under well established principles, determined by the law of Nebraska where the decedent's injury occurred. And, it seems very evident from the citation and quotation in Driekosen v. Black, Sivalls & Bryson, 1945, 158 Neb. 531, 64 N.W.2d 88, from §§ 388, 390, and 392 of the Restatement, Torts, vol. II, that the substantive rule in Nebraska is that a manufacturer is liable to a person injured by his product only when the manufacturer either knows, or from facts known to him should realize, that his product is, or is likely to be, dangerous for the use for which it is supplied. The question remains whether proof of this knowledge of actual danger or realization of possible danger is an essential part of a plaintiff's affirmative case, or whether lack of such knowledge or realization is a matter for the manufacturer to show in defense.

■ In Massachusetts the rule seems to be that every manufacturer is presumed to know the nature and qualities of his products.[3] Thornhill v. Carpenter-Morton Co., 1915, 220 Mass. 593, 108 N.E. 474; see Farley v. Edward E. Tower Co., 1930, 271 Mass. 230, 171 N.E. 639, 86 A.L.R. 941; and Carter v. Yardley, 1946, 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559, does not indicate to the contrary. Thus, once a plaintiff es-

3. This is certainly the rule when "inherently dangerous" articles are involved, and we think from Carter v. Yardley, infra, that in all probability it is also the rule when the articles involved are not in that category.

tablishes in a Massachusetts court that a manufacturer-defendant's product is dangerous in its ordinary use, and that no warning of its danger was given, a presumption of the defendant's knowledge of the danger arises, and this presumption with, of course, proof of causation and injury, completes the plaintiff's *prima facie* case. Hence in Massachusetts it is up to a manufacturer-defendant to come forward, if it can, with exculpatory evidence of its faultless ignorance of the dangers of its product to those who might use it. But does this Massachusetts rule of presumptive knowledge apply in the case at bar or must we look to Nebraska's rule, whatever its rule may be?

■ The question posed lies in the field of conflict of laws. Thus, in accordance with the views expressed in Judge Magruder's opinion in Sampson v. Channell, 1 Cir., 1940, 110 F.2d 754, 128 A.L.R. 394, certiorari denied 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415, endorsed in Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, we refer to the conflicts rule in Massachusetts for the answer, for our choice of law must conform to the choice which would be made by the Supreme Judicial Court of that Commonwealth.

■ We cannot be sure what conflicts rule the Massachusetts courts would apply in the exact situation presented since we have found no Massachusetts case in point. Nevertheless we think the highest Massachusetts court would choose its own rule of presumptive knowledge as applicable in the case at bar in conformity with the general rule stated in § 595 of the Restatement, Conflict of Laws, which under the heading Proof of Facts reads as follows:

"(1) The law of the forum governs the proof in court of a fact alleged.

"(2) The law of the forum governs presumptions and inferences to be drawn from evidence."

And see particularly comment c. under the above section.

■

Further support for this view is found in Gregory v. Maine Central R. R. Co., 1945, 317 Mass. 636, 59 N.E.2d 471, 159 A.L.R. 714. In that case the court considered the question whether a plaintiff in a suit in Massachusetts for personal injuries suffered in Maine had the burden of proving his lack of contributory fault in accordance with the law of Maine or whether the burden of proving his contributory fault rested upon the defendant in accordance with a Massachusetts statute. In holding that the Massachusetts statute applied, the court, with copious citations which we omit, spoke in 317 Mass. on pages 639 and 640, 59 N.E.2d on page 474, as follows:

"What conduct constitutes contributory negligence of the plaintiff is a question of substantive law governed by the law of Maine, where the injury happened. * * * But the law of the forum—Massachusetts—governs the procedural question of the burden of proof, and under our statute the burden of proof of contributory negligence is on the defendant. * * * The applicable substantive law of Maine as to what conduct constitutes contributory negligence goes no farther than to define it as a failure, contributing to the injury, to exercise as much care as the ordinary prudent man would have exercised under like circumstances. Whether the evidence conclusively shows such failure or not, is a procedural question to be determined according to rules of practice in force in Massachusetts."

■ Since the Massachusetts statute referred to in the above quotation puts on the defendant the burden of proof in the sense of the burden of going forward with the evidence, which concerns us here, as well as the burden of proof in the sense of the burden of persuasion, with which we are not concerned, the Gregory case indicates that the burden of going forward with the evidence is regarded in Massachusetts as a procedural matter to be determined in accordance with the rules of practice in

force in the forum. We do not think the rationale of this case is limited to contributory negligence.[4] Therefore we conclude that the plaintiff may maintain her cases even though she did not introduce any direct evidence that the defendant knew or should have at least suspected that its product was or might be dangerous to those who would use it.

Sylvania Electric Products, Inc., as appellant in Nos. 4992 and 4993 makes the further contention that it is relieved of all liability by the releases given to General Electric Company by the decedent and by the plaintiff individually and in her capacity of guardian of her minor son. The argument is that in the releases the decedent and the plaintiff admitted receipt of complete satisfaction from General Electric Company for their respective injuries. Wherefore it is said that to permit them to recover here would be to allow them more than one satisfaction for their injuries, which, of course, they cannot have. Thus, it is asserted that the reservation in the releases of rights against other suppliers of material to the decedent's employer is void and without effect because the releasors had nothing to reserve.

Again factual basis for the contention is lacking. The releases as we read them do not purport to have been given in full settlement of all the releasors' damages. They purport only to release General Electric Company insofar as it and it alone contributed to cause the losses suffered by the plaintiff and the decedent. Thus, the court below correctly charged the jury that it should deduct the gross amounts received in settlements or compromises ($28,502), from any verdict it might return for the plaintiff.

We have considered other arguments advanced by Sylvania Electric Products, Inc., as appellant, such as its argument that the decedent was guilty of contributory negligence as a matter of law, only to reject them as without merit. We do not think they call for separate discussion.

Irene Barker's appeal from the denial of her motion to amend the judgment in the personal injury case by adding interest on the amount of the verdict calculated from the date of the writ remains for consideration.

She rests her claim to interest exclusively on § 6B of Chapter 231 of the Massachusetts General Laws quoted in the margin.[5] We do not think the Massachusetts statute applies.

Both parties appear to concede, and we agree, that under the rule of Klaxon v. Stentor Electric Mfg., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, the applicable law must be chosen in accordance with the conflicts rule of Massachusetts. And, as pointed out earlier in this opinion, Massachusetts follows the usual rule that liability in personal injury cases is governed by the law of the place where the injury occurred, Trudel v. Gagne, 1952, 328 Mass. 464, 104 N.E.2d 489; Gregory v. Maine Central R. R., 1945, 317 Mass. 636, 59 N.E.2d 471, 159 A.L.R. 714. Presumably also, although we have found no case in Massachusetts squarely on the point, the

4. Perhaps the foregoing discussion of conflict of laws principles is academic for the reason that the Massachusetts court might apply its local rule of presumptive knowledge on quite different reasoning. The Nebraska court so far as we can discover has never considered the Massachusetts rule either to adopt it or to reject it, and in this situation, if the Massachusetts court should hold that Nebraska law applied, it might well follow the usual practice and assume in the absence of indications to the contrary that its rule of presumption was also the rule in Nebraska.

5. "*Interest from Date of Writ Added to Damages Awarded in Certain Civil Actions.*—In any action of tort in which a verdict is rendered or a finding made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon from the date of the writ, even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law."

courts there would follow the usual rule stated in § 412 of the Restatement, Conflict of Laws (1934), that "The measure of damages for a tort is determined by the law of the place of wrong." That is to say, in the words of Comment a. on § 412, "what items of loss are to be included in the damages" is determined by the law that creates the right to recover in the first place.

 On principle, interest on a verdict from the date of the writ is an item of substantive damages awarded "in order that the plaintiff may be more fully and justly compensated for the wrong complained of." Moore-McCormack Lines, Inc., v. Amirault, 1 Cir., 1953, 202 F.2d 893, 895. And Massachusetts accepts this general principle, for in D'Amico v. Cariglia, 1953, 330 Mass. 246, 112 N.E.2d 807, the Supreme Judicial Court of Massachusetts in discussing the statute now under consideration and its predecessor said that "Under both statutes interest was to be included as an item of damages." [6] Under Massachusetts conflicts rules, therefore, it follows that the plaintiff's right to interest on the verdict in the personal injury case figured from the date of the writ must be determined by the law of Nebraska.

 We are not referred to any Nebraska authority supporting the plaintiff's position. In this situation the Nebraska rule is presumed to be the general common-law rule as it prevailed in Massachusetts prior to the statutory changes, see John B. Fray Co. v. S. Silk, Inc., 1923, 245 Mass. 534, 140 N.E. 259, and the Massachusetts rule prior to the statutory changes was that interest is not an element of the damages recoverable in actions of tort for personal injuries. Cochran v. Boston, 1912, 211 Mass. 171, 97 N.E. 1100, 39 L.R.A.,N.S.,

120; see D'Amico v. Cariglia, 1953, 330 Mass. 246, 247, 112 N.E.2d 807.

The judgments of the District Court are affirmed.

MAGRUDER, Chief Judge (concurring).

I concur in the opinion and judgment of the court.

It is undisputed that under the substantive law of Nebraska a manufacturer owes a duty of ordinary care to remote but foreseeable users of his manufactured products, and is liable to such users for harm proximately caused by the manufacturer's negligence. If suit had been brought in a Massachusetts state court on this alleged Nebraska tort, no doubt the Massachusetts courts would apply the foregoing substantive law of Nebraska. See Peterson v. Boston & Maine R. R., 1941, 310 Mass. 45, 36 N.E. 2d 701. Judge Woodbury's opinion has found indications in the Massachusetts decisions that in such a suit, without regard to whether a Nebraska court would do the same thing, the Massachusetts courts would apply a "presumption," regarded by them as a rule of local procedure, that the manufacturer who puts the component parts together must be taken to know the nature and quality of the resultant product which he solicits the public to purchase. By this is meant not a conclusive or irrebuttable presumption, which becomes a rule of substantive law (see Am.L.Inst., Rest. of Conflicts § 595, Comment c; Peterson v. Boston & Maine R. R., 1941, 310 Mass. 45, 47, 36 N.E.2d 701), but that such knowledge is a "compelled inference" in the event that the manufacturer fails to discharge his burden of "going forward with evidence" tending to show that he neither knew, nor in the exercise of care would have discovered, by preliminary

---

6. It should be noted that plaintiff's reliance on this case for the proposition that the inclusion of interest from the date of the writ is a procedural matter, is misplaced. The court there held procedural only the statutory *change* in the method of computing interest from computation by jury to computation by the clerk of court, not the right to have interest included as a part of the damages.

tests or inspections, the potentially dangerous character of the manufactured product. Such was the situation in the case at bar, where the defendant did not go forward with any evidence of an exculpatory nature. The manufacturer in that situation is treated as if he knew, that is, he is "charged with knowledge," for by force of the presumption it must be taken that he actually knew, or in the exercise of due care would have discovered, the dangerous properties of his product before putting it on the market. Judge Woodbury's opinion also concludes that a federal district court sitting in Massachusetts in a diversity of citizenship case such as this would be bound to apply the rule of presumption which the Massachusetts state courts would apply, even though the state courts for their own purposes might classify such presumption as a local rule of "procedure." See Boyle v. Ward, 3 Cir., 1942, 125 F.2d 672.

I assume that Judge Woodbury's opinion is right in the foregoing respects, but since the subject matter is certainly a difficult and cloudy one I should like to add an additional comment which tends to support the court's conclusion that the judgments for the plaintiff, now on appeal, should be affirmed. If Judge Woodbury's opinion is correct, the plaintiff below was entitled to a binding instruction that Sylvania must be taken to have known that the powdered beryllium with which it coated its glass tubing might cause a lung disease to artisans making the ordinary and expectable use of the product. The district court gave no such binding instruction, but the error, if it was an error, has become harmless to the plaintiff in view of the fact that the jury brought in a plaintiff's verdict anyway.

In the charge to the jury the district court said that a manufacturer who produces an article that is inherently dangerous "is presumed to know the nature and quality of the product and its component parts; and if he or it knew or should have known the product was in-herently dangerous, the manufacturer owed a legal duty to use reasonable care to prevent injury to those whom he knows or has reason to know will use or come in contact with the product." By this I take it the district court merely meant that it was permissible for the jury to infer as a fact, on the preponderance of probabilities, that the manufacturer knew or should have known the dangerous character of its product. I say this because later in the charge the district court distinctly left it to the jury to determine as a fact whether the defendant knew or should have known by the exercise of reasonable care "that the tubes were inherently dangerous, namely that the powder particles of the tubes would slough off in their use and the powder content, beryllium, * * * was poisonous." The jury were told that it was for them to resolve that question. "If the defendant did not know or should not have known by the exercise of reasonable care, the plaintiff cannot recover, as it is the plaintiff's burden of proof to prove that the defendant knew or should have known."

In other words, all that the court below did was to apply to the situation the familiar rule of *res ipsa loquitur* in the simple form of a permissible, but not a compelled, inference. See Sweeney v. Erving, 1913, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815; United States v. Hull, 1 Cir., 1952, 195 F.2d 64, 66. The Massachusetts state courts would certainly have gone this far, and I take it also that the Nebraska courts would have done so, even though they might not have applied a rule of "presumption," that is, a compelled inference of knowledge in the absence of exculpatory evidence offered by the manufacturer. See Miratsky v. Beseda, 1941, 139 Neb. 299, 297 N.W. 94; Security Ins. Co. v. Omaha Coca-Cola Bottling Co., 1954, 157 Neb. 923, 62 N.W.2d 127; Benedict v. Eppley Hotel Co., 1954, 159 Neb. 23, 65 N.W.2d 224. And see Note, The Procedural Effect of Res Ipsa Loquitur in Nebraska, 1954, 33 Neb.L.Rev. 620.