Joseph J. RICCIUTI, Plaintiff-Appellant,

v.

VOLTARC TUBES, INC., Defendant-Appellee.

No. 184, Docket 25873.

United States Court of Appeals Second Circuit.

Argued Feb. 5, 1960.

Decided April 1, 1960.

Thomas L. Mackin, Boston, Mass., Paul F. Shaughnessy, Marlborough,

Mass., on the brief, for plaintiff-appellant.

Gregory C. Willis, Bridgeport, Conn., for defendant-appellee.

Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, United States Court of Claims.[1]

MADDEN, Judge.

The plaintiff brought this action in the United States District Court for the District of Connecticut against a manufacturer of neon tubes. These tubes were coated with material containing beryllium, and the plaintiff alleged that as a result of his use of the tubes, he contracted berylliosis, a disease of the lungs. His complaint alleged that between 1943 and 1956 he was self-employed in the sign-making business in Massachusetts, and that from 1944 to 1948, he purchased, from various sources, tubes made by the defendant, a Connecticut corporation. It also alleged that the plaintiff's disability occurring as a result of the disease in question commenced in 1953, but that his symptoms were not diagnosed as berylliosis until January 27, 1956.

This suit was brought on December 2, 1957. Jurisdiction in the District Court was based on diversity of citizenship. 28 U.S.C. (1952 ed.) § 1332. On December 27, 1957, the defendant filed a general denial. Depositions were taken and interrogatories filed. On January 12, 1959, the defendant moved for summary judgment. That motion was denied on March 11, 1959. On February 18, 1959, the defendant moved for permission to file a special defense setting up the statute of limitations. That motion was granted, over the plaintiff's objection, on March 2, 1959. Thereupon, on March 30, 1959, the defendant again moved for summary judgment, based on the statute of limitations. This motion was granted on June 4, 1959, and this appeal from the order granting summary judgment to the defendant was filed on June 30, 1959.

Since the action was brought in the District Court in Connecticut, the court applied the statutes of limitations which would have been applied by the Connecticut state courts, Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1021, 85 L.Ed. 1477; Walton v. Arabian American Oil Co., 2 Cir., 1956, 233 F.2d 541, certiorari denied, 1956, 352 U.S. 872, 77 S.Ct. 97, 1 L.Ed. 2d 77; State of Maryland ex rel. Thompson v. Eis Automotive Corp., D.C.Conn. 1956, 145 F.Supp. 444, i. e., those of Connecticut, Thomas Iron Co. v. Ensign-Bickford Co., 1945, 131 Conn. 665, 42 A.2d 145. Connecticut has three statutes of limitations which might arguably be applied in this case. Conn.Gen.Stat. § 52–584 (Rev. ed. 1958), covering actions for personal injuries caused by negligence, provides that such actions shall be barred after

"one year from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, * * * except that no such action may be brought more than three years from the date of the act or omission complained of * * * * "

Conn.Gen.Stat. § 52–577 (Rev. ed. 1958) requires an action founded on a tort to be brought "within three years from the date of the act or omission complained of." Conn.Gen.Stat. § 52–576 provides a six-year period of limitations for actions based on implied contracts.

The district judge found that the action would have been barred under any of these statutes, so he did not decide which one of them was applicable to this case.

It is clear that the six-year statute, applicable to actions on implied contracts, would bar this action, which was not brought until more than eight years after the last sale of one of the defendant's products was made to the plaintiff.

The action would also be barred if the one-year negligence statute were to be applied, since it was brought more than

---

1. Sitting by designation.

one year after the plaintiff had received the diagnosis of his disease.

■ It is not clear, however, that under Connecticut law this action would be barred under the three-year statute applicable to actions on torts generally. The statute says:

> "No action founded upon a tort shall be brought but within three years from *the date of the act or omission complained of.*" [Conn. Gen.Stat. § 52–577 (Rev. ed. 1958)] [Emphasis supplied.]

The Connecticut Supreme Court has interpreted the language "the date of the act or omission complained of," as used in the one-year negligence statute, to mean the time of injury resulting from an inherently defective product. Handler v. Remington Arms Co., 1957, 144 Conn. 316, 130 A.2d 793. In that case the defendant was the manufacturer of a defective cartridge, the explosion of which resulted in the plaintiff's injuries. The sale of the cartridge to the plaintiff had taken place more than one year prior to the commencement of the action, but the injury had occurred less than one year prior thereto. The court said that the sale was not the only act or omission complained of, but that the complaint alleged that the defendant, knowing a defective cartridge to be a source of unreasonable risk of injury, permitted it to be available for use without indicating by label or otherwise the possible danger.[2] The court said this "was a claim of conduct continuing to the time of injury. When the wrong

sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." 130 A.2d at page 795. The reasoning of this case would seem to vitiate the force of cases like Kennedy v. Johns-Manville Sales Corp., 1948, 135 Conn. 176, 62 A.2d 771;[3] Tralli v. Triple X Stores, Inc., 1954, 19 Conn.Sup. 293, 112 A.2d 507, and Maynard v. New Haven Gas Company, 1955, 20 Conn.Sup. 31, 120 A.2d 156. See Rogers v. White Metal Rolling & Stamping Corp., 2 Cir., 1957, 249 F.2d 262.

Although the Connecticut court in the Handler case was concerned with the predecessor of the one-year negligence statute, the relevant statutory language was exactly the same as that of the three-year tort statute, which we are here considering, and we can think of no reason why the same language should be interpreted differently.

The District Court took this view of the three-year statute, but concluded that the injury could not have occurred after 1953 (four years before the action was brought). This conclusion appears to have been based on the plaintiff's allegation in his complaint that "the plaintiff since the year 1953 has been disabled from pursuing his usual occupation and has suffered a substantial loss of earnings and a substantial impairment of his earning capacity." In considering the defendant's motion for summary judgment, it was necessary to view the allegations in a light most favorable to the plaintiff. The plaintiff alleged that he was self-employed and engaged in the

2. The complaint in this case alleges a similar failure to warn in these terms: "The defendant should have known the use to which the products manufactured by it would be put including the above described method commonly used in fabricating neon signs and that in following that procedure some beryllium would be deposited in the mouth and thence in the lungs of the 'glass blower.' The defendant, nevertheless, failed to warn the plaintiff and other such users that such use was in fact dangerous, a fact which the defendant should have known but a fact which was not obvious to or

known by this plaintiff." Thus this case, like Handler, is different from Vilcinskas v. Sears, Roebuck & Co., 1956, 144 Conn. 170, 127 A.2d 814.

That a cause of action is stated is determined by Massachusetts law. Rogers v. White Metal Rolling & Stamping Corp., 2 Cir., 1957, 249 F.2d 262; Wright v. Carter Products, Inc., 2 Cir., 1957, 244 F.2d 53.

3. It was the rule of the Kennedy case which formed the basis for the decision in Dincher v. Marlin Firearms Co., 2 Cir., 1952, 198 F.2d 821.

business of fabricating and selling neon signs until 1956. In the deposition of the plaintiff, as taken by the defendant, the plaintiff stated that he had ceased working as a glass blower in May, 1955. These allegations, together with the fact that the plaintiff's statement that he was "disabled from pursuing his usual occupation" in 1953 does not necessarily mean that he completely stopped his glass-blowing activities in that year, lead us to the conclusion that it cannot be said at this point in the proceedings that the plaintiff's injury did not occur less than three years before the commencement of his action. However, it must be noted that the plaintiff's disease was not diagnosed until January 27, 1956. The plaintiff urges that the "time of injury" should be interpreted to refer to that date, which is the time "when the accumulated effects of the deleterious substance manifest themselves." Urie v. Thompson, 1949, 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282.

With respect to the time of injury in a case like this, we have not found, nor has there been cited to us, any Connecticut case which deals directly with the question.[4]

■ Where a Federal court must apply the law of a state, and there is no direct authority from the courts of that state as to how they would decide the particular point of law at issue, the Federal court must make its own determination as to what the state courts would probably do. King v. Order of United Commercial Travelers, 1948, 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608; Capitol Records v. Mercury Records Corp., 2 Cir., 1955, 221 F.2d 657, 662; Davis v. Smith, 3 Cir., 1958, 253 F.2d 286, 289; Rayonier, Inc. v. Bryan, 5 Cir., 1957, 249 F.2d 405, 408; Hadden v. United States, 1955, 130 F.Supp. 610, 619, 131 Ct.Cl. 326, 340. In making its determination, the Federal court is justified in examining decisions in other jurisdictions. Herrick v. Sayler, 7 Cir., 1957, 245 F.2d 171, 174.

■ The rule that the time of injury, or the time when the claim accrues, means the time when a disease is diagnosed has been adopted by the Supreme Court of the United States for the purpose of the statute of limitations of the Federal Employers' Liability Act, 45 U.S.C.A. § 56, Urie v. Thompson, supra, and has been applied by other Federal courts and the courts of other states. See Sylvania Electric Products v. Barker, 1 Cir., 1955, 228 F.2d 842, 847–848, certiorari denied, 1956, 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 854; Stafford v. Shultz, 1954, 42 Cal.2d 767, 270 P.2d 1. Stafford was an action against a physician for alleged negligent treatment of a wounded leg. The court said:

" * * * the statute of limitations does not commence to run until the plaintiff discovered his injury, or through the use of reason-

4. An indication of the attitude of the Connecticut courts with respect to an analogous problem is found in Palladino v. Nardi, 1947, 133 Conn. 659, 54 A.2d 265, which was an action for alienation of affections. The defendant objected to testimony as to events which happened prior to the period of the statute of limitations. The court said, "The plaintiff was entitled to lay her complaint as of the time when her husband's affection for her was finally completely alienated and to recover for so much of the loss or impairment as occurred within the period allowed by the Statute of Limitations. Maggay v. Nikitko [117 Conn. 206, 213, 167 A. 816, 818 (1933)]. Alienation of affections does not ordinarily and certainly did not in this case, become complete at a definite time, but was progressive in its nature." 54 A.2d at pages 266–267. In Maggay v. Nikitko, supra, the court said " * * * as the gist of an action for alienation of affections is the loss of consortium, no right of action accrues until such loss occurs. If, prior to six years before the action was begun, the plaintiff's right of consortium had been altogether destroyed, the statute would bar the action; but if, within that period, there was a loss or impairment of that right by wrongful acts of the defendant, the action lay without regard to the time when those acts took place." 167 A. at page 818.

able diligence, should have discovered it * * * " (270 P.2d at page 7). Cf. Huysman v. Kirsch, 1936, 6 Cal.2d 302, 57 P.2d 908, 913, and Marsh v. Industrial Accident Commission, 1933, 217 Cal. 338, 18 P.2d 933, 86 A.L.R. 563 which discusses many Connecticut workmen's compensation cases, and decides that,

> "From our study of the subject we are brought to the conclusion that in the case of a latent and progressive disease, such as pneumoconiosis, it cannot reasonably be said that the injury dates necessarily from the last day of exposure to a dust-laden atmosphere and that the prescriptive period begins to run from that day. Rather, according to our view, should the date of injury be deemed the time when the accumulated effects culminate in a disability traceable to the latent disease as the primary cause * * * " (18 P.2d at page 938).

It is true that the Marsh case, and the cases which it discusses, are workmen's compensation cases, and that the concept of compensable injury with which they were dealing is somewhat different from the concept of injury resulting from a tort. However, the court in Huysman v. Kirsch, supra, applied the principle as to when the statute of limitations begins to run which was developed in the Marsh case to an action for negligence. The First Circuit, in Sylvania Electric Products v. Barker, supra, 228 F.2d at page 848, said:

> "The Nebraska court has repeatedly held in workmen's compensation cases that the statutory period within which such actions must be brought does not begin to run until the employee acquires knowledge of a compensable disability, see the recent case of Dryden v. Omaha Steel Works, 1947, 148 Neb. 1, 26 N.W.2d

293, and from this we assume, in the absence of authority to the contrary, that it would apply the same liberal rule in actions of tort like the present."

See also Urie v. Thompson, supra, 337 U.S. at page 170, 69 S.Ct. at page 1024. We agree. We think it unreasonable to hold that the statute of limitations begins to run against an injured person at a time when he does not in fact know, and could not with the exercise of reasonable care and diligence know, what his injury is. To so hold would nullify any right to recover for many serious but slowly and insidiously developing diseases.[5] We hold, therefore, that in this case the statute of limitations began to run on January 27, 1956, the date on which the plaintiff's disease was diagnosed, unless the defendant can show that the plaintiff should, in the exercise of reasonable diligence, have earlier discovered the nature of his disease.

■ Since the District Court was of the opinion that this action would be barred by any of the three Connecticut statutes of limitation which were arguably applicable, it did not decide which of them was in fact applicable. Since we think that the action would not be barred if the three-year tort statute is applicable, we remand the cause to the District Court for a determination as to whether this is the applicable statute. The answer to this question will depend on how the Connecticut courts can be expected to characterize the claim in this case. Perhaps they would look to Massachusetts law for this characterization, since the injury occurred there and the cause of action is "created" by Massachusetts law. Perhaps they would apply their own law to characterize the claim for the purpose of their statute of limitations. There may be sufficient indication in the Connecticut decisions as to the attitude of the Connecticut courts. See, e. g.,

5. See 63 Harv.L.Rev. 1177, 1207: "It would seem preferable, in all cases where the harm is of a gradually increasing and inherently, unknowable nature, to delay commencement of the statutory period until manifestation of substantial harm [citing Urie v. Thompson, supra]."

Antinozzi v. D. V. Frione & Co., Inc., 1951, 137 Conn. 577, 79 A.2d 598, and Staples v. Lucas, 1955, 142 Conn. 452, 115 A.2d 337, 55 A.L.R.2d 1282.[6] If there is not, the law of other jurisdictions will have to be examined. We think these are questions which should properly be decided in the first instance by the District Court.

 The plaintiff urges that the trial judge abused his discretion when he permitted the defendant, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C. to file the special defense of the statute of limitations more than thirteen months after it had filed its answer. The trial Judge's discretion to permit amendments to pleadings under Rule 15(a) is broad. We do not think, however, that his discretion is so broad as to permit an amendment when the other party would be substantially prejudiced thereby. In this case, the defendant filed its answer on December 27, 1957. This was more than one year after the plaintiff actually knew what his disease was, which would cause his action to be barred under the Connecticut statute applicable to negligence actions, but it was less than two years thereafter. The plaintiff suggests that if the defendant had pleaded the statute of limitations within the time required for the filing of its answer, the plaintiff might have been able to discontinue this action and bring another in some state where the defendant was doing business and the action would not have been barred. By the time the defendant moved for permission to file its special defense setting up the statute of limitations, more than three years had elapsed from the date of the plaintiff's discovery of the nature of his disease, and a new action may have been barred in those states. If, therefore, it should be decided that the three-year Connecticut statute of limitations

does not apply here, and that the one-year statute does apply, the plaintiff may well have been prejudiced by the granting to the defendant of leave to amend. The plaintiff does not mention other states in which the defendant might have been sued in the period between the filing of the answer and the filing of the special defense, so we cannot tell whether or not he was actually prejudiced by the action of the trial judge permitting the delayed amendment of the answer. Since we are remanding the case for the reasons stated above, the plaintiff will have an opportunity to show whether he was so prejudiced.

The judgment is reversed and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

---

6. We are aware that Handler v. Remington Arms Co., supra, involved a "negligence action," based on a failure to warn of the danger of an inherently dangerous article. In that case, however, there was no contention made that any statute other than the one-year statute was applicable, so the court did not consider the question of whether in fact this was the applicable statute. In addition, the case held only that the statute did not bar the action.